■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNELL BRUNSON, Appellant. [892 NYS2d 261]—

Kavanagh, J.

In May 2000, defendant, while confined to a special housing unit at Upstate Correctional Facility in Franklin County, brutally assaulted and ultimately caused the death of his cellmate (hereinafter the victim). Thirty minutes after the assault began, correction officers finally gained entry to the cell and, after restraining defendant, found that the victim had been seriously injured. The victim was immediately transported to a local hospital where he later died as a result of serious brain injuries that he sustained in the attack.[1] Defendant was subsequently charged with murder in the second degree, manslaughter in the first degree and assault in the second degree (two counts). After a jury trial, defendant was acquitted of murder, but found guilty of the remaining three charges. He was subsequently adjudicated a persistent violent felony offender and sentenced to an aggregate prison term of 25 years to life. County Court, without a hearing, denied defendant's subsequent CPL 440.10 motion to vacate his judgment of conviction. Defendant now appeals from both the judgment of conviction and the order denying his CPL 440.10 motion.

---

1. While no skull fractures were noted in the postmortem examination, the victim was found to have numerous lesions on the brain caused by multiple blows to his head. In addition to traumatic cerebral edema and numerous hemorrhages being found in and around the victim's brain stem, he had fractures to his front teeth, fluid in his abdomen, and bruises and abrasions across his entire body.

Initially, we note that defendant's argument that County Court failed to properly instruct the jury on the charge of justification has not been preserved for our review because he failed to voice any objection to the court's proposed charge at the charge conference or after the instructions had been delivered to the jury and it had commenced its deliberations (*see* CPL 470.05 [2]; *People v Pettway*, 58 AD3d 944, 946-947 [2009], *lv denied* 12 NY3d 820 [2009]; *People v Cushner*, 46 AD3d 1121, 1124 [2007], *lv denied* 10 NY3d 809 [2008]). Even if we were to consider the claim, the charge, as delivered, satisfied the court's obligation to instruct the jury regarding fundamental legal principles that are applicable to all criminal cases as well as those that specifically applied to this action (*see* CPL 300.10 [2]).

Specifically, defendant takes issue with County Court's refusal to provide the jury with a definition of the term "forcible sodomy."[2] He also claims that the court committed reversible error when it instructed the jury that defendant was under a duty to retreat before using deadly physical force even though he claimed that the victim had attempted to forcibly sodomize him. As for the court's refusal to define forcible sodomy, this is such a well understood term (*see generally People v Woodring*, 48 AD3d 1273, 1276 [2008], *lv denied* 10 NY3d 846 [2008]) that it is simply not reasonable to assume that the jury needed the term more fully described to be sure that there was not "any possible confusion" as to what defendant claims prompted his use of deadly physical force (*People v Wise*, 204 AD2d 133, 135 [1994], *lv denied* 83 NY2d 973 [1994]).

We agree with defendant that County Court erred in instructing the jury that defendant had a duty to retreat before using any force even if he was under a reasonable belief that he was about to be subjected to a "forcible sodomy" by the victim. While such a duty does not exist in that circumstance (*see* Penal Law § 35.15 [2] [b]; *People v Goetz*, 68 NY2d 96, 106 n 5 [1986]; *People v Hill*, 52 AD3d 380, 383 [2008]; *People v Fuller*, 108 AD2d 822, 823 [1985]), we note that a defendant who seeks to justify his or her use of force upon another may only use that degree of force that he or she reasonably believed "to be necessary to defend himself, herself or a third person" (Penal Law § 35.15 [1]; *see People v Mothon*, 284 AD2d 568, 570 [2001], *lv denied* 96 NY2d 865 [2001]; *People v Vecchio*, 240 AD2d 854,

---

2. Defendant did not ask that this definition be given until after County Court had delivered its charge and was in the process of providing the jury with supplemental instructions after the jury had commenced its deliberations.

855 [1997]). Here, there is simply no reasonable view of the evidence that would support the conclusion that defendant's assault of the victim was a reasonable response to a threat that defendant claimed existed or was in any way limited to that degree of force necessary to defend himself from the victim's attack. The ferocious and unrelenting nature of the attack was underscored by testimony of correction officers who observed defendant continue to batter and beat the victim long after he had ceased offering any resistance. Such evidence belies any suggestion that the force employed by defendant was justified or used solely in his self-defense. In that regard, a correction officer testified that on eight different occasions during the attack, defendant refused to obey orders that he move to the cell's recreation pen and, instead, continued to strike the victim, while shouting "say uncle" and "who wins, who wins." Defendant also is alleged to have told the officers to "get somebody down here fast or I will kill him." On these facts, it is simply not reasonable to conclude that this jury would have arrived at a different verdict and found defendant's use of force justified even if it had been instructed that at the time defendant first used force on the victim, he was not under an obligation to retreat.

Defendant also claims that County Court erred in denying without a hearing his motion to vacate his judgment of conviction on the ground that he did not receive the effective assistance of counsel. In support of this contention, defendant identifies a laundry list of his counsel's perceived shortcomings, including the fact that counsel had failed to object to the court's charge on justification and its refusal to define "forcible sodomy." As previously noted, the content of the court's charge as delivered did not constitute reversible error. Defendant also complains of counsel's failure to properly advise him of all of the salient details regarding plea offers made by the People and his failure to retain a psychologist to testify in his defense.

As for the plea offers, the People, before the matter was presented to the grand jury, proposed that defendant plead guilty to manslaughter in the second degree in full satisfaction of all charges pending against him and he would receive a prison term of 7¹/₂ to 15 years. This offer carried with it an admonition that if rejected and defendant was convicted after a trial, an application would be made by the People that he be adjudicated a persistent violent felony offender and a minimum prison term of 12 years to life be imposed as his sentence. Defendant acknowledges being informed of the offer to allow him to plead guilty to manslaughter, but denies ever being told by his counsel that, if he rejected the proposed plea, an application would be

made that he be adjudicated a persistent violent felony offender.[3]

"Meaningful representation by counsel includes the conveyance of accurate information regarding plea negotiations, including relaying all plea offers made by the prosecution. Defendant had the burden to show that a plea offer was made, that defense counsel failed to inform him of that offer, and that he would have been willing to accept the offer" (*People v Rogers*, 8 AD3d 888, 890-891 [2004] [citations omitted]; *see People v Fernandez*, 5 NY3d 813, 814 [2005]). Defendant's claim, in essence, is that, had he known that as a persistent violent felony offender he faced a mandatory life sentence, he would have accepted the People's plea offer. However, it is important to note that defendant faced the same mandatory life sentence if convicted of murder in the second degree and that he repeatedly rejected any offers that would have allowed him to plead to a lesser charge that would have avoided the imposition of a life sentence. In fact, defendant, despite his self-serving statements to the contrary, never demonstrated any willingness or inclination to give up his right to trial or accept any plea offer made by the People. Throughout these proceedings, he was adamant that he would prevail at trial and not be convicted of any substantive charge in connection with the victim's death. This conclusion is borne out by letters that defendant wrote to his mother in which he indicated that if he had "copped out" before going to trial he would always wonder if he "could've beat it." Defendant also voiced concern that a guilty plea to any charge would compromise a civil action he intended to commence to recover damages for injuries he claimed to have sustained in this altercation. On these facts, even if counsel did not, as defendant claims, advise him of the implications of being adjudicated a persistent violent felony offender, it did not constitute a failure to provide him with meaningful legal representation (*see People v Fernandez*, 5 NY3d at 814; *People v Goldberg*, 33 AD3d 1018, 1019 [2006]).

Nor are we persuaded by defendant's claim that counsel's representation was ineffective simply because he failed to employ a psychologist to aid in the defense. Initially, we note that counsel may have concluded for strategic reasons that a

3. In a letter addressed to defendant's attorney dated March 1, 2001, the specter of defendant being adjudicated a persistent violent felony offender is discussed in detail by the District Attorney. Defendant claims not to have seen this letter prior to going to trial or being informed by his attorney of its contents. In an affirmation dated April 16, 2003, submitted in support of defendant's CPL 440.10 motion, defendant's trial counsel makes no reference to this letter nor makes any statements in regard to defendant's assertion that he failed to discuss persistent violent felony offender status with him.

defense dependent upon psychiatric testimony would be inconsistent and would hopelessly compromise defendant's principal claim that he acted in self-defense and was justified in using force on the victim. Also, defendant's acquittal of murder in the second degree—an offense requiring a specific intent—and his conviction of the lesser charge of manslaughter in the second degree raises some question whether any such testimony would have added anything to the defense. Moreover, while counsel's representation of defendant may not have been perfect, he did obtain an advantageous plea offer that defendant ultimately rejected and convinced County Court, over the People's objection, to deliver an instruction to the jury on justification that may, under the facts presented, have been inapplicable and inappropriate. Counsel, as previously noted, did obtain an acquittal for defendant of the most serious charge in the indictment, made appropriate objections throughout the trial and, in multiple instances, sought mistrials on behalf of defendant. On balance, counsel provided defendant with meaningful representation and vigorously sought throughout the trial to fully protect his legal interests (see People v Baldi, 54 NY2d 137, 147 [1981]; People v Black, 65 AD3d 811, 815 [2009]; People v Collins, 56 AD3d 809, 810 [2008], lv denied 11 NY3d 923 [2009]; People v Echavarria, 53 AD3d 859, 864 [2008], lv denied 11 NY3d 832 [2008]; People v Jackson, 48 AD3d 891, 894 [2008], lv denied 10 NY3d 841 [2008]).

Defendant also claims that County Court should have ordered a mistrial after it learned that some members of the jury had inadvertently seen him in restraints as he was being transported outside the courtroom by officials of the Department of Correctional Services. We disagree. County Court's response to this incident was, in every way, measured and appropriate. It admonished the jurors that they should not draw any adverse inference against defendant as a result of this observation, and the court received credible assurances from each of the jurors that his or her verdict would be based solely upon the evidence introduced at trial. In that regard, it was simply not practical to expect that this jury would not know that defendant had been incarcerated in a state prison facility at the time of this incident and was still in custody while he was on trial. As such, it cannot be said that defendant suffered any meaningful prejudice from this encounter, and his motion for a mistrial was properly denied (see People v Harper, 47 NY2d 857, 858 [1979]; People v Farless, 245 AD2d 878, 879 [1997], lv denied 91 NY2d 972 [1998]; People v Fioravantes, 229 AD2d 784, 786 [1996], lv denied 89 NY2d 920 [1996]).

We arrive at the same conclusion with respect to defendant's

claim regarding County Court's decision to place him in ankle restraints after the trial had commenced. To be sure, "a defendant may not be physically restrained before the jury unless there is a reasonable basis, articulated on the record, for doing so" (*People v Rouse*, 79 NY2d 934, 935 [1992]; *see People v Buchanan*, 13 NY3d 1, 4 [2009]; *People v Robinson*, 64 AD3d 803, 803-804 [2009]; *People v Rush*, 44 AD3d 799, 800 [2007], *lv denied* 9 NY3d 1009 [2007]). Here, County Court was informed by a correction officer of security concerns that he had regarding defendant during the trial and that, when questioned by the court in that regard, defendant stated, "I can't take it no more . . . The only answer is put some restraints on me." When the court spoke to defendant about these comments and asked whether he needed to be restrained, defendant would not give any assurance that he could control his emotions during the trial and specifically stated "you probably won't see it until it reaches a certain point that I can't hold it in anymore." Therefore, the court's decision to order the use of ankle restraints was, under the circumstances, a reasonable response to the apparent threat that defendant presented to himself as well as to others in the courtroom.

Finally, we are not persuaded that defendant's sentence was harsh and excessive. Considering his status as a persistent violent felony offender and the brutal nature of the attack he inflicted upon the victim, we do not find that any extraordinary circumstances exist or that the sentence imposed was an abuse of County Court's discretion to warrant a reduction of his sentence (*see People v Burroughs*, 64 AD3d 894, 898-899 [2009], *lv denied* 13 NY3d 794 [2009]; *People v Portee*, 56 AD3d 947, 950 [2008], *lv denied* 12 NY3d 820 [2009]). Furthermore, we find no evidence to support defendant's claim that this particular sentence was imposed in retaliation for his refusal to give up his right to a trial or to enter a guilty plea (*see People v Beauharnois*, 64 AD3d 996, 1001 [2009], *lv denied* 13 NY3d 834 [2009]; *People v Perkins*, 62 AD3d 1160, 1162 [2009], *lv denied* 13 NY3d 748 [2009]; *People v Massey*, 45 AD3d 1044, 1048 [2007], *lv denied* 9 NY3d 1036 [2008]).

Mercure, J.P., Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment and order are affirmed.