◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND CLYDE, Appellant. (Appeal No. 1.) [899 NYS2d 757]—

Appeal from a judgment of the Cayuga County Court (Robert B. Wiggins, J.), rendered March 24, 2008. The judgment convicted defendant, upon a jury verdict, of assault in the second degree (two counts), unlawful imprisonment in the first degree and promoting prison contraband in the first degree.

It is hereby ordered that the judgment so appealed from is reversed on the law and a new trial is granted on counts two through five of the indictment.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, two counts of assault in the second degree (Penal Law § 120.05 [7]). We agree with defendant that County Court erred in failing to articulate a reasonable basis on the record for its determination

to restrain defendant in shackles during the trial. "The shackling of a defendant in the presence of the jury is inherently prejudicial and constitutes reversible error unless a reasonable basis therefor is in the record or it is clear that the jury was not prejudiced thereby" (*People v Vigliotti*, 203 AD2d 898, 898 [1994]; *see generally People v Rouse*, 79 NY2d 934, 935 [1992]; *People v Mendola*, 2 NY2d 270 [1957]). Inasmuch as the record establishes that the shackles were visible to the jury (*cf. People v Tascarella*, 227 AD2d 888, 888-889 [1996], *lv denied* 89 NY2d 867 [1996]), we cannot agree with the conclusion of the dissent that the jury was not prejudiced thereby and thus that the error is harmless (*cf. People v Sykes*, 224 AD2d 986 [1996]; *Vigliotti*, 203 AD2d at 898). To the contrary, "where a court, without adequate justification [articulated on the record], orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation" (*Deck v Missouri*, 544 US 622, 635 [2005]). In view of our determination of defendant's contention, we need not consider the remaining contentions in appeal No. 1 raised by defendant in his main brief and pro se supplemental brief. In the interest of judicial economy, however, we note that we also agree with defendant that the court abused its discretion in refusing to preclude the prosecutor from questioning medical experts on the issue whether the victim's injuries met the legal definitions of physical injury and serious physical injury set forth in the Penal Law (*see People v Forcione*, 156 AD2d 952 [1989], *lv denied* 75 NY2d 919 [1990]). "[T]he ultimate determination whether those injuries satisfied the statutory definition[s] was not beyond the ken of the typical juror" (*id.* at 952).

In appeal No. 2, the People appeal from an order insofar as it granted that part of defendant's motion for a trial order of dismissal pursuant to CPL 290.10 (1) with respect to count one of the indictment, charging attempted rape in the first degree (Penal Law §§ 110.00, 130.35 [1]). We conclude that the court properly granted that part of defendant's motion inasmuch as the requisite evidence of defendant's intent to rape the victim by the use of forcible compulsion, a necessary element of the crime charged, was legally insufficient (*cf. People v Lamagna*, 30 AD3d 1052, 1053 [2006], *lv denied* 7 NY3d 814 [2006]; *see generally People v Bleakley*, 69 NY2d 490, 495 [1987]).

All concur except Scudder, P.J., who dissents and votes to affirm in the following memorandum.

Scudder, P.J. (dissenting). In appeal No. 1, the majority concludes that the failure of County Court to articulate a rea-

sonable basis on the record for its determination that defendant should be shackled during trial requires reversal, in the absence of a showing that defendant was not prejudiced by reason thereof. The majority also concludes that the court erred in admitting in evidence two medical opinions on the issues of whether defendant's actions created a substantial risk of serious physical injury with respect to one of the individuals assaulted (victim No. 1), and whether the second individual assaulted (victim No. 2) sustained a physical injury. In appeal No. 2, the majority concludes that the evidence of defendant's intent to rape victim No. 1 is legally insufficient. I respectfully dissent in both appeals.

In appeal No. 1, the majority correctly concludes that the court erred in failing to articulate on the record a reasonable basis for its determination that shackles were warranted (*see People v Buchanan*, 13 NY3d 1, 4 [2009]; *People v Rouse*, 79 NY2d 934, 935 [1992]). I further agree with the majority that such shackling was prejudicial to defendant, and that the error implicates a constitutional right. However, I disagree with the majority that the error is not subject to harmless error analysis.

Victim No. 1, a female civilian motor vehicle operator at Auburn Correctional Facility, was walking to the storehouse and loading dock area of the prison when she was attacked by defendant, an inmate. Defendant grabbed her from behind, put her in a headlock close to his body, and covered her mouth and nose with his hand. When victim No. 1 struggled, defendant slammed her against the wall, face first, and he shoved a sock or towel that he had brought to the scene into her mouth, making it difficult for her to breathe. Victim No. 1 managed to dislodge the sock or towel sufficiently to enable her to scream for help, but defendant warned her that he would kill her if she did not shut up. He then shoved his fist into her kidney, inserted the sock or towel back into her mouth, and pushed her to her knees onto the floor. He grabbed her by her hair and, according to victim No. 1, he yanked her head back as far as he could. He simultaneously covered her mouth and nose, thereby cutting off her air supply. Victim No. 1 testified that she could feel her eyes rolling into the back of her head and that she started to pass out, but she was able to move defendant's hands and dislodge the sock or towel so that she could breathe, whereupon she begged defendant not to hurt her. Defendant instead shoved victim No. 1 onto the floor, face first, bouncing her face off of the cement in the process. Victim No. 1 tried to scream, but defendant pushed the sock or towel back into her mouth and told her to shut up, using expletives. He then punched her in the

face, dazing her, and he pulled one of her hands behind her back and tied that hand with something that he had brought to the scene. When victim No. 1 refused to give defendant her other hand, defendant sat on her back while straddling her with his legs, and he grabbed her other hand and tied her hands together.

At that moment, victim No. 2, another prison employee, approached the scene in order to investigate the noise. From a security mirror located by a corner of the hallway, he observed defendant straddling the back of victim No. 1 while tying her hands together with white strips of cloth. Victim No. 2 then activated an alarm, turned the corner and yelled. Defendant climbed off the victim's back and proceeded to run down the hall toward victim No. 2, covering his face with his left arm. Although victim No. 2 managed to trip defendant, defendant stood up and threw victim No. 2 against the wall. He then punched victim No. 2 in the head, knocking him unconscious.

Defendant's assault of victim No. 2 was witnessed by a third employee, who saw defendant run into the loading dock area. A lockdown was ordered for the entire area, and defendant was thereafter found in the yard, soaked with sweat and behaving in a nervous manner. Victim No. 2 and the third employee thereafter identified defendant as the perpetrator. New York State Police investigators later retrieved a sock, brown leather work gloves, a roll of tape, a green towel, and a torn piece of sheet from the hallway where victim No. 1 was attacked. When analyzed for bodily fluids, both gloves, the green towel, and the tee shirt worn by victim No. 1 testified positive for seminal fluid. Sperm was found on the left glove and the green towel, which matched a buccal swab subsequently obtained from defendant.

In my view, the above-described evidence, which was virtually uncontroverted at trial, overwhelmingly proved defendant's perpetration of the crimes in appeal No. 1. Applying the test for constitutional harmless error, I conclude that "in light of the totality of the evidence, there is no reasonable possibility" that the improper shackling of defendant contributed to his conviction and thus that the error is harmless beyond a reasonable doubt (*People v Douglas*, 4 NY3d 777, 779 [2005]; *see generally People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Crampton*, 107 AD2d 998, 999 [1985]). Notably, the jury necessarily knew from the facts and elements of the crimes charged that defendant was incarcerated in a state correctional facility when he committed the crimes (*see generally People v Brunson*, 68 AD3d 1551, 1556 [2009]). Also, the court properly charged the jury

with respect to the presumption of innocence and directed that the verdict could be based only on the evidence presented at trial.

I do not agree with the majority that harmless error analysis is inapplicable to the type of error committed here, i.e., where the court fails to articulate a reasonable basis on the record for its determination to restrain a defendant, nor do I see any reason why this particular error should be treated differently from other errors that implicate constitutional rights (*cf. People v Lopez*, 207 AD2d 658, 659 [1994], *lv denied* 84 NY2d 937 [1994]). The recognition that the error can be harmless and that reversal is not required per se whenever a defendant is improperly restrained at trial are supported by the fact that proper limiting or cautionary instructions can negate the effect of such an error (*see People v Gilmore*, 12 AD3d 1155, 1156 [2004]; *People v Felder* [appeal No. 2], 201 AD2d 884, 885 [1994], *lv denied* 83 NY2d 871 [1994]), and by the fact that reversal is not required where a jury's observation of a defendant in restraints is merely inadvertent (*see People v Harper*, 47 NY2d 857, 858 [1979]; *People v Montgomery*, 1 AD3d 984, 985 [2003], *lv denied* 1 NY3d 631 [2004]; *People v Russ*, 300 AD2d 1031, 1032 [2002], *lv denied* 99 NY2d 632 [2003]). Whether an error is harmless entails an analysis different from that applied in determining whether a defendant is prejudiced by the error. As previously noted, I agree with the majority that defendant was prejudiced. Nevertheless, I conclude that, in view of the overwhelming evidence, there is no reasonable possibility that such prejudice contributed to the verdict (*see People v Gonzalez*, 55 AD2d 656 [1976]; *see generally Crimmins*, 36 NY2d at 237). I therefore would affirm the judgment in appeal No. 1 despite the court's error in failing to articulate a reasonable basis for defendant's restraints. I also would affirm the judgment despite the arguably erroneous admission in evidence of the aforementioned testimony of the two medical witnesses. Because of the overwhelming evidence of defendant's guilt, there is no significant possibility that the jury would have acquitted defendant if that testimony had not been permitted (*see Crimmins*, 36 NY2d at 242).

In appeal No. 2, I do not agree with the majority that the evidence is legally insufficient to establish defendant's intent to rape victim No. 1. "A verdict is legally sufficient when, viewing the facts in [the] light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (*People v Danielson*, 9 NY3d 342, 349 [2007]; *see generally People v Bleakley*, 69 NY2d 490, 495

[1987]). In this case, defendant grabbed victim No. 1 from behind, and he assaulted her and restrained her using items that he had assembled prior to the crime and had brought with him to the scene. Sperm was found on two of those items, and that sperm matched a buccal swab obtained from defendant. In addition, seminal fluid was found on four of the items, including the tee shirt worn by victim No. 1. While defendant's conduct may have been consistent with an attempt to escape rather than an attempt to rape victim No. 1, the test for legal sufficiency does not require that the crime in question be the only possible crime for which there is legally sufficient evidence. It requires only that the evidence, when viewed in the light most favorable to the People, establish a valid line of reasoning and permissible inferences from which a rational jury could find that the elements of the crime in issue were proven beyond a reasonable doubt. In my view, given the existence of seminal fluid at the scene, the jury could rationally infer that defendant's intent in restraining victim No. 1 was to rape her. I therefore would reverse the order insofar as appealed from in appeal No. 2, deny defendant's motion for a trial order of dismissal in its entirety, reinstate count one of the indictment and the verdict convicting defendant of that count, and remit the matter to County Court for sentencing on the conviction of attempted rape in the first degree. Present—Scudder, P.J., Sconiers, Green and Gorski, JJ.