21-1562-cr
*United States v. Watson*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of December, two thousand twenty-two.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                                     21-1562-cr

RONELL WATSON,

> *Defendant-Appellant*.

---

| | |
|---|---|
| FOR APPELLEE: | FRANCISCO J. NAVARRO, Assistant United States Attorney (Kevin Trowel, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |
| FOR DEFENDANT-APPELLANT: | DANIEL HABIB, Federal Defenders of New York, Inc., New York, NY. |

Appeal from a judgment of conviction of the United States District Court for the Eastern District of New York (Kuntz, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Ronell Watson appeals from a judgment of conviction, entered against him on June 21, 2021, following a jury trial. Watson was found guilty of: (1) attempted murder of a federal officer, in violation of 18 U.S.C. §§ 1114(3) and 1113; (2) assault of a federal officer through the use of a weapon and the infliction of bodily injury, in violation of 18 U.S.C. § 111(a)(1), (b); and (3) possession and discharge of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (iii). These convictions related to Watson's shooting of FBI Special Agent Christopher Harper ("Special Agent Harper"), who was on duty in an unmarked car in front of Watson's residence in Brooklyn while conducting surveillance on a nearby home. Watson hit Special Agent Harper with one shot in his back as he drove away, seriously injuring him, and also hit the rear of the car. At trial, Watson's counsel did not dispute that Watson shot Special Agent Harper, but rather principally argued that Watson felt he was in danger because he did not know that Special Agent Harper was a law enforcement officer when he approached the unmarked car parked in front of his residence and the car suddenly sped away. Thus, the defense argued that Watson lacked any intent to murder and acted in self-defense when he made the split-second decision to shoot. Subsequent to the jury's guilty verdict on all three counts, Watson was sentenced to 382 months' imprisonment followed by three years of supervised release.

On appeal, Watson argues that: (1) the district court erred in denying his motion for a new trial because he was prejudiced by an *ex parte* interaction between the courtroom deputy and the jurors during trial regarding safety concerns; (2) the district court's self-defense instruction was

2

erroneous because it did not specifically provide that Watson could use deadly physical force to prevent a perceived robbery or burglary and did not advise the jurors to consider his physical attributes and prior experiences in assessing the reasonableness of his belief about his physical safety; and (3) the district court's statements at sentencing extolling Special Agent Harper reflected improper considerations in determining the appropriate sentence and thereby constituted procedural error and a violation of due process. We assume the parties' familiarity with the underlying facts and procedural history, which we reference only as necessary to explain our decision to affirm.

## I. *Ex Parte* Communication with the Jurors

Watson argues that the district court erred in denying his motion for a new trial because his right to be present at every stage of trial was violated by an *ex parte* communication about courtroom safety between the courtroom deputy and the jurors, which occurred outside the presence of the parties. The circumstances surrounding this interaction can be summarized as follows: After trial adjourned for the day, one of the jurors approached the courtroom deputy expressing concerns about the use of cellphones in the courtroom by individuals she believed to be Watson's family members, whom she described as "three black people in the front." App'x at 1063. Other jurors also expressed concern that Watson's family members could photograph them during trial. The courtroom deputy noted that the individuals identified by the jurors may have been allowed to keep their cellphones because they were attorneys, court staff, or inhouse news reporters, but the jurors insisted that those individuals were Watson's family members. The courtroom deputy advised the jurors that he would discuss their concerns with the judge.

As set forth below, although this *ex parte* interaction between the courtroom deputy and the jurors regarding their courtroom security concerns was improper, we conclude that the district

3

court did not abuse its discretion in denying the motion for a new trial, given its assessment of the potential prejudice against Watson and, in particular, the district court's careful and thorough *voir dire* of the jurors following the interaction.

A district court may vacate a judgment of conviction and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. We review a district court's denial of a motion for a new trial for abuse of discretion, upholding findings of fact that were made in the course of deciding the motion unless they are clearly erroneous. *United States v. Stewart*, 433 F.3d 273, 295 (2d Cir. 2006).

"A defendant in a criminal case has the right, rooted in the Sixth Amendment Confrontation Clause and Fifth Amendment Due Process Clause, to be present at every trial stage." *United States v. Mehta*, 919 F.3d 175, 180 (2d Cir. 2019). "The right to be present has been extended to require that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds." *Id.* (quoting *United States v. Mejia*, 356 F.3d 470, 474 (2d Cir. 2004)). Accordingly, the district court should not respond to a jury concern about the case in an *ex parte* manner. *See id.* at 181. This rule applies not only to jury inquiries during deliberations, but also to any jury concerns about the case raised during the trial. *See, e.g.*, *id.* at 178, 180–82 (applying this rule to safety concerns that jurors raised orally during trial).

Nevertheless, "[n]ot every violation of a defendant's right to be present will result in reversal." *United States v. Collins*, 665 F.3d 454, 460 (2d Cir. 2012). Instead, an *ex parte* communication in response to a jury inquiry "may be considered harmless error where the communication cannot be said to have prejudiced the defendant." *See Mejia*, 356 F.3d at 476; *see also United States v. Henry*, 325 F.3d 93, 106–08 (2d Cir. 2003) (holding that the district court's failure to fully disclose the contents of the jury note did not warrant reversal because this error did

4

not prejudice the defendant); *Mehta*, 919 F.3d at 181–82 (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (stating that a district court may "take action to mitigate the prejudicial effects of the *ex parte* meeting" and that "[t]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right")).

Here, we find no abuse of discretion in the district court's determination that the *ex parte* interaction between the courtroom deputy and the jurors did not prejudice Watson.[1] The district court implemented a thorough procedure to determine whether there was any prejudice to Watson from that interaction. In particular, after receiving and sharing with the parties the courtroom deputy's memorandum summarizing his interaction with the jurors, the district court promptly held sealed *in camera* proceedings, during which it admitted the memorandum into the record and heard from the defense and prosecution as to how to proceed. The district court then conducted an individual *voir dire* of each juror in the presence of defense counsel and the prosecutors to determine whether the jurors could remain fair and impartial in light of the concerns raised during their interaction with the courtroom deputy. The questions utilized by the district court during the *voir dire* were taken from a list of questions developed and approved by counsel for both sides.[2] In response to the district court's questions, each juror confirmed that nothing said during the *ex parte* discussion with the courtroom deputy undermined their ability to presume Watson's

---

[1] The parties disagree over whether the courtroom deputy's *ex parte* interaction with the jurors should be regarded as "'presumptively prejudicial.'" *See Sher v. Stoughton*, 666 F.2d 791, 793 (2d Cir. 1981) (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). We need not address this issue because, even assuming *arguendo* that a presumption of prejudice applies to this interaction, we conclude that the government, through the district court's findings following a careful *voir dire* of the jurors, has rebutted that presumption. *See Remmer*, 347 U.S. at 229–30 ("The trial court . . . should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.").

[2] Although Watson was not present during these *in camera* proceedings, his counsel waived his appearance and Watson does not challenge his non-appearance on appeal.

innocence and that they could remain fair and impartial. The district court found all sixteen jurors to be credible in their responses to the questions. Despite the defense's argument that the jurors' concerns about being photographed by Watson's family during trial suggested that they believed Watson to be guilty, the district court found that the jurors' desire to protect their privacy and anonymity was not incompatible with their ability to continue presuming Watson's innocence. Having reviewed the record, we see no reason to disturb the district court's findings regarding the jurors' credibility and impartiality. *See United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002) (stating that the district court's determination regarding a juror's bias will not be overturned "absent clear error"); *United States v. Torres*, 128 F.3d 38, 44 (2d Cir. 1997) ("Given the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference . . . ."); *United States v. Ploof*, 464 F.2d 116, 118 (2d Cir. 1972) ("[T]he judge was in the best position to evaluate the juror's demeanor and to determine, by the juror's answers to the judge's questions, whether he could fairly and impartially hear the case and return a verdict based solely on the evidence presented in court.").

To the extent Watson suggests that the district court did not inquire about or address any potential prejudice resulting from the jurors' safety concerns, we disagree. As an initial matter, many jurors did not even mention having any safety concerns. Moreover, those who expressed some concerns about safety explained during the *voir dire* that their concerns had been addressed and therefore would not impact their ability to be fair and impartial. For example, Juror Four noted that she was concerned about the use of cellphone cameras in the courtroom, but then told the district court, "now that you're telling me it's a nonevent, I really don't have a problem with that." App'x at 314. She added, "[i]t was never about the case or the defendant or anything like that, it was about what I was observing." *Id.* Similarly, although Juror Eight had expressed safety

concerns to the courtroom deputy about the ability of someone to take a photograph in the courtroom, she indicated during the individual *voir dire* that she had no continuing concerns. Juror Fifteen was also questioned about her safety concerns and indicated she was "definitely going in with an open mind" and "would definitely continue to be fair and impartial." App'x at 410–11. Based upon our review of the questioning of the jurors, we conclude that the district court adequately assessed any potential prejudice to Watson that could have resulted from juror safety concerns.[3]

In sum, the district court's thorough questioning of the jurors in consultation with both parties and its findings following questioning were sufficient to ensure that the courtroom deputy's interaction with the jurors had not prejudiced Watson. *See, e.g.*, *Sher*, 666 F.2d at 794–95 (finding no prejudice to the defendant where, after an anonymous caller communicated with the jurors, the district court notified the parties and promptly conducted individual *voir dire*, during which each juror assured the district court that he or she could remain impartial). Accordingly, the district court did not abuse its discretion in denying Watson's motion for a new trial.

## II.     Self-Defense Instruction

Watson argues that the district court's self-defense instruction was erroneous because: (1) it did not specifically advise the jury that Watson could use deadly force in response to a burglary

---

[3] Although Watson also challenges the district court's individual *voir dire* on the basis that the district court "did not ask any questions about race," Appellant's Br. at 41, we find that argument similarly unpersuasive. As an initial matter, Watson did not request that the district court ask such questions. Furthermore, the defense objected to only one of the jurors as exhibiting potential racial bias—Juror Four, who initially approached the courtroom deputy with concerns about the cellphone use. After giving both the defense and the prosecution an opportunity to respond, the district court concluded that the concerns about cellphone use expressed by Juror Four were not motivated by racial considerations. In short, on this record, we find no error in the district court's handling of any potential concerns of racial bias on the part of the jurors. *See United States v. Peterson*, 385 F.3d 127, 134 (2d Cir. 2004) ("A district court's investigation of juror misconduct or bias is a delicate and complex task. Therefore, a trial judge has broad flexibility in such matters, especially when the alleged prejudice results from statements by the jurors themselves, and not from media publicity or other outside influences." (internal quotation marks and citations omitted)).

7

or a robbery; and (2) it did not advise the jury to consider whether his physical attributes (such as impaired vision) and prior experiences (such as his experiences as a robbery victim and knowledge of burglaries in the neighborhood) could provide a reasonable basis for his belief that Special Agent Harper intended to harm him.[4] As set forth below, we conclude that there is no basis to reverse the convictions based upon the content of the self-defense instruction.

"We review challenges to jury instructions *de novo* but will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015) (internal quotation marks omitted). "Instructions are erroneous if they mislead the jury as to the correct legal standard or do not adequately inform the jury of the law." *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021).

"Because the law pertaining to self-defense is a matter of federal common law, we find it appropriate to look to state court decisions for guidance." *United States v. Melhuish*, 6 F.4th 380, 396–97 (2d Cir. 2021); *see Jackson v. Edwards*, 404 F.3d 612, 621–28 (2d Cir. 2005) (examining the law of self-defense under New York Penal Law § 35.15). Under New York law, an instruction on self-defense "is warranted whenever there is evidence to support it," and the prosecution bears the burden of disproving it beyond a reasonable doubt. *See Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001) (citing, *inter alia*, N.Y. Penal Law §§ 25.00(1), 35.00)). "[I]f on any reasonable view

---

[4] The district court's instruction to the jury on self-defense provided in relevant part:

> The law recognizes the right of a person who is not the aggressor to stand his ground and use force to defend himself or another. However, he may use only such force as is reasonably necessary to defend himself or another person against the imminent use of unlawful force. The question is: Would a reasonable person faced with the same facts and circumstances that confronted the defendant at the time of their occurrence have believed that he was in imminent danger of death or grievous bodily injury, such that it was necessary for him to use in his defense, in order to avoid such death or injury, the force or means that might cause the death of his assailant?

App'x at 839.

of the evidence, the fact finder might have decided that the defendant's actions were justified . . . . the trial court should instruct the jury as to the defense and must when so requested." *Id.* (quoting *People v. Padgett*, 60 N.Y.2d 142, 144–145 (1983)); *see also United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990) ("[A] criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court."). In contrast, "if, after a hearing, the court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge." *United States v. Zayac*, 765 F.3d 112, 120 (2d Cir. 2014) (alterations omitted).

Under New York law, a person may use "physical force upon another person" when he "reasonably believes such to be necessary to defend himself" from what he "reasonably believes to be the use or imminent use of unlawful physical force by such other person." N.Y. Penal Law § 35.15(1). Moreover, a person may use "deadly physical force upon another person" when he "reasonably believes that such other person is committing or attempting to commit" a robbery or a burglary. N.Y. Penal Law §§ 35.15(2)(b)–(c), 35.20(3). The law of self-defense contains both subjective and objective elements. *See People v. Goetz*, 68 N.Y.2d 96, 110–12 (1986). However, a person is not justified in using deadly physical force if that person is the "'initial aggressor': the first person in an altercation who uses or threatens the imminent use of deadly physical force." *People v. Brown*, 33 N.Y.3d 316, 320 (2019); *see* N.Y. Penal Law § 35.15(1)(b) (providing that the justification of self-defense is not available to an "initial aggressor" unless he "has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the

9

latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force").

Here, the district court instructed the jury that a person may use physical force as is reasonably necessary to defend himself against the imminent use of unlawful force. Watson argues, however, that the district court erred by failing to separately instruct the jury that a person can use deadly physical force against another person when he reasonably believes the other person is committing or attempting to commit a robbery or a burglary and that he was prejudiced by the omission. We disagree.

The uncontroverted evidence introduced at trial, including video surveillance footage, established that Watson drove towards Special Agent Harper's parked car, then exited his car with a firearm, approached Special Agent Harper who was in the driver's seat with his window up, and shot Special Agent Harper as he attempted to speed away. Even construing the trial evidence most favorably to Watson, no rational jury could find that it was objectively reasonable for Watson to believe, at the time he fired shots at the departing car, that Special Agent Harper was committing or attempting to commit a robbery or a burglary, or that Watson's reaction was that of a reasonable person acting in self-defense. *See Zayac*, 765 F.3d at 120 (emphasizing that a defendant is entitled to a duress instruction only if the defense has "a foundation in the evidence" (internal quotation marks omitted)); *see also People v. Patterson*, 176 A.D.3d 1637, 1639 (4th Dep't 2019) (rejecting, based upon a review of surveillance footage, "defendant's contention that a reasonable person could have believed that the victim was committing or attempting to commit a . . . robbery at the time defendant fired his weapon" and concluding no instruction on that issue was necessary (internal quotation marks omitted)); *People v. Brunson*, 68 A.D.3d 1551, 1554 (3rd Dep't 2009) (rejecting a challenge to the self-defense instruction because "no reasonable view of the evidence"

10

supported the conclusion that the defendant's assault of the victim was a reasonable response to a threat that the defendant claimed existed). Such a conclusion could only be reached by ignoring the "imminence" requirement. Therefore, given the lack of an evidentiary foundation for this particular defense theory, the district court did not err in declining to give a separate "robbery or burglary" instruction.

Pursuant to the more general self-defense instruction given to the jury by the district court, Watson argued to the jury that he reasonably believed he was in physical danger, apart from whether it was reasonable to believe that Special Agent Harper attempted to rob or burglarize him as the car sped away. *See, e.g.*, App'x at 896 (defense counsel arguing to the jury in summation that "if, when you approach that car with your empty hand outstretched, the driver responds by flooring the gas pedal, it would be natural that you would firmly, sincerely, but mistakenly perceive the occupant in that car as a danger and a threat"); *id.* at 890 ("You're starting from a place that when [Watson] fired those shots, from his perspective, knowing what he knew, and not knowing who was in that car, whether they were armed and whether or not they might turn around and fire on him as [Special Agent Harper] peeled out in that split second[;] he was not intending to kill anyone and that he just used reasonable force to drive away and inadvertently hit that car while lawfully defending himself.").

Watson contends that the district court erred by failing to specifically instruct the jury to consider Watson's physical attributes and prior experiences, including evidence regarding his visual impairment, his prior experiences as a victim of robberies, and his knowledge of burglaries in the area. To be sure, New York courts "have frequently noted that a determination of reasonableness must be based on the 'circumstances' facing a defendant or his 'situation,'" including "physical attributes of all persons involved, including the defendant," and "any prior

11

experiences he had which could provide a reasonable basis for a belief that another person's intentions were to injure or rob him or that the use of deadly force was necessary under the circumstances." *Goetz*, 68 N.Y.2d at 114; *see also* Leonard B. Sand et al., 1 *Modern Federal Jury Instructions—Criminal*, ¶ 8.08, Instr. 8–9 (explaining that, with respect to the defendant's belief regarding the danger, "[t]he law requires that there must be reasonable grounds for such belief, based on the conduct of the victim and all the facts and circumstances surrounding and preceding the encounter and the relationship between the person killed and the defendant"); *Criminal Jury Instructions (New York), Second Edition*, PL 35.15(2)(B), at 2 (explaining that "[t]he determination of whether a person reasonably believes a certain circumstance to be true" requires, *inter alia*, consideration of whether "a 'reasonable person' in defendant's position, knowing what the defendant knew and being in the same circumstances, would have had those same beliefs" (emphasis omitted)).

Here, consistent with New York law, the district court instructed the jury that, in assessing whether Watson was entitled to use physical force in self-defense, the jury must consider whether "a reasonable person faced with the same facts and circumstances that confronted the defendant at the time of their occurrence [would] have believed that he was in imminent danger of death or grievous bodily injury." App'x at 839. Although the district court did not specifically reference the jury's ability to consider the defendant's physical attributes and prior experiences, we conclude that the failure to do so (even assuming it was error) was harmless. The instruction, as given, was broad enough to include such considerations. *See, e.g.*, *People v. Hagi*, 169 A.D.2d 203, 211 (1st Dep't 1991) (rejecting challenge to the self-defense instruction and explaining that, "in directing the jury to consider 'the circumstances of this case as you find them to be', the court clearly directed the jurors to take into account defendant's particular circumstances" even if the instruction

did not specify the types of circumstances that the jury could consider); *see also United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006) ("We do not review portions of jury instructions in isolation, but rather consider them in their entirety to determine whether, on the whole, they provided the jury with an intelligible and accurate portrayal of the applicable law." (alteration adopted) (internal quotation marks omitted)).[5]

Moreover, defense counsel argued during summation these specific factors—at length—to the jury. For example, defense counsel repeatedly argued that the jurors needed to consider Watson's visual impairment in assessing the reasonableness of his perception of the danger as Special Agent Harper's car sped away. *See, e.g.*, App'x at 887 ("Ronell Watson's loss of vision is important because it not only bears on what he was able to perceive and see in those moments, it shows why he might feel particularly vulnerable and feel the need to protect himself in that split second as he reacted to [Special] Agent Harper's flooring of the gas and screeching in front of him."). Similarly, defense counsel argued that both Watson's prior experience as a robbery victim and his knowledge of burglaries in the area reasonably heightened his perception as to the nature of the imminent danger he faced, even if that perception was mistaken. *See, e.g.*, App'x at 895– 96 (highlighting that the jurors should place themselves in Watson's situation and imagine that "you have been robbed multiple times and you live in a neighborhood prone to burglaries and you live in a house that stands out in your neighborhood"). Indeed, at one point in the defendant's

---

[5] Although Watson relies on *People v. Wesley*, 76 N.Y.2d 555 (1990) to support his position, that case is distinguishable. The trial court in *Wesley* not only failed to instruct the jury that they could consider the defendant's characteristics and prior experiences in assessing the reasonableness of his belief regarding danger, but also (unlike the district court here) did not even instruct the jury that reasonableness should be assessed from the standpoint of the circumstances confronting the defendant at the time of the incident. 76 N.Y.2d at 559–60 ("In this case, the jury was never instructed that they should assess the reasonableness of defendant's belief that he was in deadly peril by judging the situation from the point of view of defendant as though they were actually in his place.").

summation of the case, defense counsel specifically mentioned that such factors could be considered under the district court's broad instruction on reasonableness:

> The Government has to prove beyond a reasonable doubt that Ronell Watson wasn't reacting to a perceived threat, didn't believe he was defending himself. And that's as to either charge. You have to find that they proved those things to you beyond a reasonable doubt. And when you're doing that and when you're thinking about how he reacted, you have to think about the circumstances as Ronell Watson reasonably believed them, including his difficulty with his vision, including his knowledge of burglaries in the area, including his history of being a robbery victim, and you have to decide if he was acting out of fear that Agent Harper was casing his house and posed an imminent danger and he was acting in self-defense as Judge Kuntz will define it.

App'x at 925. In its rebuttal summation, the government did not suggest that these factors could not be considered by the jury under the district court's anticipated self-defense instruction, but rather argued that there was a lack of evidence to support these arguments.

Under these circumstances and given the overwhelming evidence disproving the defendant's tenuous self-defense theory, any alleged error in failing to give a more specific instruction regarding particular factors (such as the defendant's physical attributes and prior experiences) under the reasonableness standard was harmless. *See United States v. Levy*, 578 F.2d 896, 903 (2d Cir. 1978) (concluding that the error in the jury instruction was harmless because there was "an abundance of evidence pointing to the defendant's guilt"); *see also People v. Petty*, 7 N.Y.3d 277, 286 (2006) (finding that "the error in the trial court's justification charge was harmless" because "there was overwhelming evidence disproving the justification defense" and "show[ing] that defendant was the initial and only aggressor," thus leaving "no reasonable possibility that the verdict would have been different had the charge been correctly given"). Accordingly, we find no basis to disturb the convictions on this ground.

### III.    Sentencing

Watson does not challenge the substantive reasonableness of his sentence, but rather asserts that the district court committed procedural error and violated due process by relying upon Special Agent Harper's personal virtues in determining the appropriate sentence. More specifically, Watson contends that, after Special Agent Harper and his wife spoke at sentencing, "the district court concluded its remarks with fulsome praise for Harper's 'heroism'—in contrast to the 'cowardly and unjustified' Watson—lauding Harper as 'the steadfast embodiment of his fellow peace officers who day after day make our streets safer' and 'our homes more secure.'" Appellant's Br. at 3–4 (quoting App'x at 1202–03). Furthermore, Watson notes that, at the conclusion of the sentencing, the district court stated to Special Agent Harper, "You have our back and this court promises you the law will always have your back and that of your wife and that of your children." App'x at 1203–04. Watson contends that, "[i]n relying on these impermissible factors, unrelated to Watson's legal culpability, the court committed procedural error and violated Watson's due process right to an impartial judge." Appellant's Br. at 4.

"We review a criminal sentence for reasonableness, which 'amounts to review for abuse of discretion.'" *United States v. Kourani*, 6 F.4th 345, 356 (2d Cir. 2021). "This standard applies both to the substantive reasonableness of the sentence itself and to the procedures employed in arriving at the sentence." *United States v. Rigas*, 583 F.3d 108, 114 (2d Cir. 2009) (alterations adopted) (internal quotation marks omitted). A district court's reliance on an impermissible factor renders a sentence procedurally unreasonable. *See United States v. Park*, 758 F.3d 193, 199 (2d Cir. 2014). Because Watson did not object to the alleged procedural error during sentencing, we review only for "plain error." *See United States v. Rosa*, 957 F.3d 113, 117 (2d Cir. 2020). To show plain error, a defendant must show that: "(1) there is an error; (2) the error is clear or obvious,

15

rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 117–18.

We find no basis to conclude that the district court erred by relying upon any improper considerations in determining Watson's sentence. At sentencing, Special Agent Harper and his wife spoke to the district court pursuant to the Victims' Rights Act and described the devastating physical and emotional harm that the shooting had on them and their family. Special Agent Harper spoke about the surgeries he underwent, including the one to remove the bullet lodged in his chest, and the "numerous large scars in [his] torso which serve[] as a daily reminder" of what he endured. App'x at 1173–74. He further emphasized that "[t]he emotional pain . . . is in many ways worse than the physical pain." App'x at 1174. Special Agent Harper's wife likewise described her "paranoia" following the shooting, which resulted in her being "fearful every time [she] left the house, suspicious of every car that drove by," and led to "panic attacks" that made "it difficult to enjoy being with [her] kids." App'x at 1172.

The district court's decision to address Special Agent Harper at sentencing as the victim of Watson's crimes is consistent with the guidance of Rule 32, which provides that, "the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard" before imposing the sentence. Fed. R. Crim. P. 32(i)(4)(B); *see also* 18 U.S.C. § 3771(a)(4) (providing that victims have "[t]he right to be reasonably heard" at sentencing hearings). Moreover, the mere fact that the district court praised the courage, heroism, and dedicated public service of the victim, and compared those virtues to the defendant's violent conduct, does not reflect reliance on any improper consideration at sentencing or a judicial bias. *See, e.g.*, *United States v. Mangone*, 652 F. App'x 15, 18 (2d Cir. 2016) (summary order) (citing

*Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[T]he judge's comments on her personal reaction to [the defendant's] crimes are best taken as a rhetorically emphatic way of expressing a legitimate negative view of his conduct, and they do not show that the court harbored any personal bias against [the defendant].").

Furthermore, the sentencing factors under 18 U.S.C. § 3553(a) allow for consideration of the impact of the criminal conduct on the victim, including "the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to provide just punishment for the offense." *Id.* at § 3553(a)(2)(A); *see also United States v. Bradley*, 812 F.2d 774, 781 (2d Cir. 1987) ("[I]t goes without saying that the effects of the criminal's activities on his victims is another major, and wholly legitimate, subject of the sentencing judge's consideration . . . . [W]e find no support for the claim that the sentencing judge stepped beyond the bounds of his discretion in his evaluation of the information before him or in his concern for the victims of [the defendant's] repeated violations of the law."). In addition, the sentencing judge may consider the need for the sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," which would include protecting law enforcement officers who are seriously injured by violent conduct in the performance of their official duties. 18 U.S.C. §§ 3553(a)(2)(B)–(C).

Here, as set forth in the sentencing transcript, the district court meticulously discussed each of the Section 3553(a) factors in explaining the reasons for its sentence. *See generally United States v. Robinson*, 702 F.3d 22, 39 (2d Cir. 2012) (examining "[t]he clear import of the District Court's remarks, taken as a whole" in determining whether there was procedural error at sentencing). Although it may have been unnecessary and unhelpful for the district court to then stray from the language of Section 3553(a) in a rhetorical way during its closing remarks after

17

carefully analyzing the statutory factors, such as by noting that "the law will always have [the victim's] back," App'x at 1204, we conclude on this record that the comments do not reflect a plain procedural error nor a judicial bias. *See also United States v. Bermúdez–Meléndez*, 827 F.3d 160, 165 (1st Cir. 2016) ("While the court may have engaged in hyperbole, sentencing courts are entitled to broad latitude in their linguistic choices. Consequently, gratuitous rhetorical flourishes, without more, will not render a sentence infirm."). Accordingly, because Watson has not shown that the district court plainly erred, we affirm the sentence of the district court.[6]

*    *    *

We have considered all of Watson's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Because we have rejected Watson' various challenges on appeal and affirm the judgment, we need not address Watson's argument that the case should be re-assigned to a different judge on remand.

18