[859 NYS2d 791]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v INGVUE E. BUCHANAN, Appellant.

Fourth Department, June 6, 2008

**APPEARANCES OF COUNSEL**

*Ingvue E. Buchanan*, appellant pro se, and *James K. Weeks*, Fayetteville, for Ingvue E. Buchanan, appellant.

*David W. Foley, District Attorney*, Mayville (*Jason L. Schmidt* of counsel), for respondent.

**OPINION OF THE COURT**

SCUDDER, P.J.

On appeal from a judgment convicting him, after a jury trial, of murder in the second degree (Penal Law § 125.25 [1]) in connection with the death of a 14-year-old girl, defendant contends

that he was denied his right to due process because County Court required that he wear a stun belt under his clothing as a means of physical restraint. The issue whether the use of a stun belt that is not visible to the jury is subject to the same judicial scrutiny as other forms of physical restraint that are visible appears to be one of first impression in New York State. We conclude that the use of any type of physical restraint requires the court to make the same individualized security determination required for the use of physical restraints that are visible (*see Deck v Missouri*, 544 US 622, 632 [2005]). We further conclude, however, that the court's determination to require defendant to wear a stun belt in this case did not violate his right to due process.

■ We agree with defendant that the issue whether the use of restraints, visible or not, violates his right to due process must be analyzed in terms of the "three fundamental legal principles" set forth by the United States Supreme Court in *Deck* (*id.* at 630) with respect to the use of visible restraints, i.e., the presumption of innocence, the right to counsel, and the interest in maintaining a dignified judicial process (*see id.* at 630-631). We therefore address each of those principles herein. We note at the outset that, although there is no support in the record for the contention of defendant that the stun belt was visible to the jury, it nevertheless would have been preferable for the court to state on the record, outside the presence of the jury, that the stun belt was not visible (*see e.g. United States v Zeigler*, 204 F3d 1282, 1299 [10th Cir 2000]).

We conclude that the principles set forth in *Deck* were protected here. Inasmuch as the stun belt was not visible, there was no suggestion to the jury that the "justice system itself [saw] a 'need to separate . . . defendant from the community at large' " (544 US at 630), and thus we conclude with respect to the first principle that defendant's right to be presumed innocent was not implicated by the requirement that defendant wear the stun belt. We conclude with respect to the second principle that, because the stun belt was not visible, and because the court ordered that a physician examine defendant to ensure that he was not physically impaired by wearing the stun belt, the ability of defendant to participate in his own defense by testifying on his own behalf was not negatively impacted (*see id.* at 631). Although defendant contends that his ability to confer with defense counsel was adversely affected both because he was physically uncomfortable and because he feared that the stun belt would be activated, those contentions concerning his

alleged inability to confer with defense counsel are based solely upon subjective complaints, and defendant does not contend that he in fact was prevented from conferring with defense counsel by reason of the restraint (*cf. People v Mendola*, 2 NY2d 270, 277 [1957] [defendant was handcuffed to a deputy sheriff]). With respect to the third principle, the record establishes that the court ensured that defendant was treated respectfully with regard to the use of the stun belt, and thus we conclude that the dignity of the judicial process was maintained (*see Deck*, 544 US at 631-632). Indeed, as noted, a physician examined defendant at the direction of the court to ensure that he was not physically impaired by reason of the stun belt.

We reject the contention of defendant that reversal of the judgment is required on the ground that the court failed to articulate a justifiable basis for requiring him to wear the stun belt (*see generally People v Rouse*, 79 NY2d 934, 935 [1992]). Because we conclude that the court must make individualized security determinations, whether the physical restraints are visible or not, we note that it is well established that, "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation" (*Deck*, 544 US at 635). Here, the court stated that it had a policy to use restraints in "serious" cases and that it would comply with the recommendation of the sheriff's deputy to use the restraint. In any event, even assuming, arguendo, that the court lacked adequate justification for the use of the stun belt, we have previously noted herein that the stun belt was not visible to the jury, and we therefore conclude that defendant must demonstrate actual prejudice to establish a due process violation (*cf. id.*; *see generally Zeigler*, 204 F3d at 1299). Defendant has failed to do so.

 Contrary to defendant's further contention, the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). The jury was entitled to credit the testimony of defendant's employer that defendant admitted to him that he had killed the victim and placed some of her personal belongings in garbage bags that he placed on the curb in front of his house (*see generally id.*). We reject defendant's further contention that County Court abused its discretion in admitting in evidence a photograph of a pair of socks that had been removed by the police from a garbage bag located in front of defendant's house. "[T]here were enough

surrounding circumstances to permit the jury to infer" that the socks belonged to the victim (*People v Mirenda*, 23 NY2d 439, 454 [1969]; *see People v Henderson*, 265 AD2d 572 [1999]; *People v Dasch*, 79 AD2d 877, 878 [1980]), inasmuch as defendant admitted to his employer that he had removed the victim's socks and placed them in a garbage bag, and other personal items identified as belonging to the victim were recovered from the garbage bag. Defendant failed to preserve for our review his contention that the court erred in permitting the People to introduce a prior inconsistent statement made by defendant's employer to the police (*see* CPL 470.05 [2]) and, in any event, that contention is without merit. The People did not in fact introduce a prior inconsistent statement of the witness (*see* CPL 60.35 [2]).

■ Finally, we reject the contention of defendant in his pro se supplemental brief that he was denied effective assistance of counsel based on defense counsel's failure to request a hearing with respect to the court's determination to require defendant to wear a stun belt. The record establishes that defense counsel strenuously objected to the court's ruling, whereupon the court reiterated the reasons for its determination. We conclude that defendant was afforded meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147 [1981]).

Accordingly, we conclude that the judgment should be affirmed.

FAHEY, J. (dissenting). We respectfully dissent because, in our view, County Court erred in failing to apply the requisite close judicial scrutiny in determining whether defendant should have been required to wear a stun belt, and we are unable on the record before us to determine that defendant was not prejudiced by the requirement that he wear the stun belt. We therefore would reverse the judgment of conviction and grant a new trial.

We note at the outset our agreement with the majority that the use of a stun belt as a means of physical restraint, whether visible or not, requires the court to make the same individualized security determination required for the use of visible security restraints (*see Deck v Missouri*, 544 US 622, 632 [2005]). We further note at the outset that we otherwise concur with the majority with respect to defendant's remaining contentions.

## Underlying Facts

Prior to jury selection, defendant informed the court that the stun belt that he was wearing caused him to have problems

while he was seated. The court had the belt removed at that time. After jury selection and before the first witness was called to testify, defense counsel objected to the requirement that defendant wear a stun belt under his clothing throughout the trial. The court then stated that, in cases of a serious nature such as this, it was the court's policy to require a defendant to wear either leg shackles or a stun belt during trial. Defendant continued to object to the use of the stun belt on a number of grounds, stating that the stun belt was uncomfortable, affected his concentration, caused an unusual appearance under his clothing, and essentially undermined his right to a fair trial. Defendant noted that he was not required to wear a stun belt during jury selection and that he had not caused any problems at that time. Defendant stated that there was sufficient security in the courtroom and that he had not previously acted in a manner to give the court any reason to place the stun belt on him. He further stated that the court had known him for many years.

The court replied that it could not "disagree with [defendant]. You have not done anything to warrant [application of the stun belt]." The court went on to state, however, that the court has "a policy since that belt is available, and it's serious, a case like this, that in the interest of being overly cautious for security that everyone is going to be wearing that." The court indicated to defendant that he could wear leg shackles as an alternative to the stun belt.

Defendant refused to wear the leg shackles, stating that he "would rather have as any other innocent person has" the benefit of the presumption of innocence until proven guilty. Defendant again indicated that the stun belt was physically and mentally uncomfortable and that it caused his clothes to buckle, which would affect how the jury would view his appearance. The court stated that the Sheriff's Department wanted the belt to remain on defendant. Defendant then stated that "my right to . . . be assumed innocent by a jury and by anyone else is being robbed away from me."

During the People's case, defendant stated outside the presence of the jury that he was experiencing skin irritation and welts from the stun belt. He also complained that the belt was causing him to sit forward in his chair and that it appeared to the jury that he was "panting." A physician who examined defendant at the court's request, to determine whether there were any physical risks in continuing the use of the stun belt, found that there was no significant difference in defendant's blood

pressure, pulse or respiration when defendant was wearing the stun belt. The court noted that the physician prescribed a hydrocortisone cream for any rash caused by the stun belt. The court concluded that there was no medical reason not to use the stun belt. Nevertheless, the court directed that the stun belt be removed during breaks, including the lunch hour.

Defendant then reiterated, inter alia, that the stun belt infringed on the presumption of innocence, to which the court replied that it relied on the opinion of "security experts" and that it believed that "an innocent man on trial for murder is more dangerous than a guilty one." The court continued to have the medical condition of defendant monitored in response to his complaints.

Defendant wore the stun belt under his clothing throughout the trial and to verdict.

## Federal Law

In *Deck* (544 US 622 [2005]), the United States Supreme Court held that the due process clause prohibits routine use of physical restraints visible to the jury during the guilt phase of a criminal trial. The Court determined that no showing of prejudice is required to make out a due process violation from the routine use of visible restraints. The Court emphasized the importance of analyzing the use of restraints in the context of three fundamental legal principles. "First, the criminal process presumes that the defendant is innocent until proved guilty . . . [and v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process" (*id.* at 630). "Second, the Constitution, in order to help the accused secure a meaningful defense, provides him [or her] with a right to counsel . . . [and s]hackles can interfere with the accused's 'ability to communicate' with his [or her] lawyer" (*id.* at 631, quoting *Illinois v Allen*, 397 US 337, 344 [1970], *reh denied* 398 US 915 [1970]). "Third, judges must seek to maintain a judicial process that is a dignified process. The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment" (*id.*). The Court did not hold that shackles are never allowed, but *instead* found that their use is subject to close judicial scrutiny and the development of a case-specific record when such restraints are used (*see id.* at 624, 632).

In the context of jury trials, challenges to the use of stun belts as a form of restraint, and the possible implications to a criminal defendant's constitutional rights, even when not visible, have arisen throughout the country. In *United States v Durham* (287 F3d 1297 [2002]), the Court of Appeals for the Eleventh Circuit found that, although "[s]tun belts are less visible than many other restraining devices, and may be less likely to interfere with a defendant's entitlement to the presumption of innocence . . . [, they] impose[ ] a substantial burden on the ability of a defendant to participate in his [or her] own defense and confer with his [or her] attorney during a trial" (*id.* at 1306). The court further noted that, "[i]f activated, the device poses a serious threat to the dignity and decorum of the courtroom" (*id.*). The court thus determined that the stun belt "must be subjected to at least the same 'close judicial scrutiny' required for the imposition of other physical restraints" (*id.*).

In *Gonzalez v Pliler* (341 F3d 897, 901 [2003]), the Court of Appeals for the Ninth Circuit agreed with the reasoning of the Eleventh Circuit in *Durham*. The *Gonzalez* court described both the manner in which a stun belt operates as well as its failure rate:

> "A stun belt is an electronic device that is secured around a prisoner's waist. Powered by nine-volt batteries, the belt is connected to prongs attached to the wearer's left kidney region. When activated remotely, 'the belt delivers a 50,000-volt, three to four milliampere shock lasting eight seconds.' . . . Upon activation of the belt, an electrical current enters the body near the wearer's kidneys and travels along blood channels and nerve pathways. The shock administered from the activated belt 'causes incapacitation in the first few seconds and severe pain during the entire period.' . . . 'Activation may also cause immediate and uncontrolled defecation and urination, and the belt's metal prongs may leave welts on the wearer's skin requiring as long as six months to heal.' . . . Activation of a stun belt can cause muscular weakness for approximately 30-45 minutes and heartbeat irregularities or seizures . . . Accidental activations are not unknown [citing *United States v Durham* (219 F Supp 2d 1234, 1239 [ND Fla 2002]), which reported a survey showing that 11 out of 45 total activations,

or 24.4%, were accidental, but which noted the low percentage of accidental activations on general usage]" (*id.* at 899).

The federal bench is divided on the issues of whether and how a stun belt may be used. Visibility appears to be the critical factor. As discussed above, some courts have concluded that the use of a stun belt is prejudicial even when it is not visible to the jury. By contrast, other courts have concluded that the presumption of prejudice with the use of a stun belt applies only if the stun belt is visible to the jury (*see e.g. United States v Zeigler*, 204 F3d 1282, 1299 [10th Cir 2000]; *United States v Edelin*, 175 F Supp 2d 1 [D DC 2001]).

### States Other Than New York

State courts other than courts in New York are similarly divided. Those courts that have concluded that the use of a stun belt should be subjected to the same close judicial scrutiny as any other restraining device, whether visible or not, include *People v Allen* (222 Ill 2d 340, 856 NE2d 349 [2006]), *Hymon v State* (121 Nev 200, 111 P3d 1092 [2005]) and *Weaver v State* (894 So 2d 178 [Fla 2004], *cert denied* 544 US 1051 [2005]).

State courts that have held that the use of a stun belt is only prejudicial when it is visible include *Commonwealth v Romero* (938 A2d 362 [Pa 2007]), *State v Bowen* (340 Or 487, 135 P3d 272 [2006], *cert denied* 549 US —, 127 S Ct 1258 [2007]) and *State v Gulley* (2006 WL 1064062, 2006 Ohio App LEXIS 1848 [Ct App 2006]).

### New York

In New York, it is well settled that a criminal defendant may not be physically restrained in the presence of a jury without a reasonable basis that is articulated on the record (*see People v Rouse*, 79 NY2d 934, 935 [1992]; *People v Mendola*, 2 NY2d 270, 276-277 [1957]). This Court has held that the display of a physical restraint is inherently prejudicial " 'and constitutes reversible error unless a reasonable basis therefor is in the record or it is clear that the jury was not prejudiced thereby' " (*People v Paul*, 229 AD2d 932, 932-933 [1996], quoting *People v Vigliotti*, 203 AD2d 898, 898 [1994]).

### Discussion

In this case, the court set forth on the record three reasons for the use of the stun belt. First, the court stated that it was

its policy to place all defendants accused of a crime of a serious nature in either leg shackles or a stun belt during trial. Second, the court stated that the Sheriff's Department wanted defendant to wear the stun belt. Third, the court stated its belief that "an innocent man on trial for murder is more dangerous than a guilty one."

In point of fact, the court noted that defendant had "done [nothing] to warrant" the use of the stun belt, and the only reference to defendant's background was the court's acknowledgment that defendant had never caused any problems in the courtroom in his previous appearances before the court. Significantly, the court did not address the visibility of the stun belt and, on the record before us, it is unclear whether that device was visible. There is no indication in the record that any jurors observed the stun belt. As previously noted, the court did not indicate whether the stun belt was visible through defendant's clothing, although defendant complained about his appearance in front of the jury with the belt strapped underneath his clothing, and that the stun belt impeded his ability to sit and to interact with defense counsel.

The court's blanket policy of placing all defendants in either leg shackles or a stun belt based on the nature of the crime charged is directly contrary to the requirement that there be a case by case determination by the court concerning the necessity for the use of restraints along with the requisite " 'close judicial scrutiny' " (*Durham*, 287 F3d at 1306). The court's blanket policy directly violates the due process requirements for the use of visible restraints. The same close judicial scrutiny should be applied to the use of a stun belt on an individual basis, whether visible or not. The court should not relegate its duty to apply judicial scrutiny to the Sheriff's Department but, rather, it may consider the recommendation of the Sheriff's Department in making its determination (*see generally People v Thomas*, 125 AD2d 873, 874 [1986]). In addition, in arriving at our determination, we have considered the potentially serious physical consequences of the use of the stun belt.

Finally, the court's statement that "an innocent man on trial for murder is more dangerous than a guilty one" goes to the very heart of our concern with respect to the procedure used in determining whether the defendant in this case was required to wear a stun belt. The presumption of innocence must be maintained against all attempts to erode it, and courts must ensure that it is not undermined by a desire for convenience or

the demands of bureaucratic policies. The presumption of innocence requires that a trial not only be fair, but that it also appears to be fair. The appearance of fairness requires that physical restraints, whether visible or not, be used only where there is an essential state interest. Nothing in the record before us indicates that there was any essential state interest considered in the context of this defendant.

In our view, the application of a stun belt to a defendant is a deprivation of constitutional rights that always merits close judicial scrutiny and a hearing before such a device is used. We agree with the Eleventh Circuit in *Durham* (287 F3d at 1306) that a stun belt significantly impairs the ability of a defendant to participate in his own defense and must be subject to the same close judicial scrutiny applied to the use of other physical restraints. Here, the court neither complied with its affirmative duty to state on the record whether the stun belt was visible to the jury, nor did it make any individualized determination concerning the need to restrain defendant. As a result, we are compelled to conclude that reversal is required (*see e.g. Paul*, 229 AD2d 932 [1996]; *People v Sykes*, 224 AD2d 986 [1996]; *Vigliotti*, 203 AD2d 898 [1994]).

Accordingly, as noted at the outset, we would reverse the judgment of conviction and grant a new trial.

HURLBUTT and SMITH, JJ., concur with SCUDDER, P.J.; FAHEY and GORSKI, JJ., dissent and vote to reverse in a separate opinion by FAHEY, J.

It is hereby ordered that the judgment so appealed from is affirmed.