[912 NE2d 553, 884 NYS2d 337]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v INGVUE E. BUCHANAN, Appellant.

Argued May 7, 2009; decided June 30, 2009

### POINTS OF COUNSEL

*Thomas Theophilos,* Buffalo, for appellant. The use of an electric stun belt to physically and psychologically restrain appellant during his jury trial deprived him of a fair trial and due process of law. (*Deck v Missouri,* 544 US 622; *United States v Durham,* 287 F3d 1297; *Gonzalez v Pliler,* 341 F3d 897; *United States v McKissick,* 204 F3d 1282; *United States v Edelin,* 175 F Supp 2d 1; *Zygadlo v Wainwright,* 720 F2d 1221; *People v Thomas,* 125 AD2d 873.)

*David W. Foley, District Attorney,* Mayville (*Lynn S. Hodgens* of counsel), for respondent. I. Stun belts are not visible restraints and should be subject to a distinct analysis. (*Holbrook v Flynn,* 475 US 560; *Illinois v Allen,* 397 US 337; *People v Mendola,* 2 NY2d 270; *Deck v Missouri,* 544 US 622; *People v Rouse,* 79 NY2d 934; *United States v Miller,* 531 F3d 340; *Kennedy v Cardwell,* 487 F2d 101; *United States v Edelin,* 175 F Supp 2d 1; *People v Harper,* 47 NY2d 857; *People v Dugan,* 238 AD2d 922.) II. The trial court articulated a reasonable basis for the stun belt on the record. (*United States v Gray,* 292 F Supp 2d 71; *United States v Durham,* 287 F3d 1297; *Deck v Missouri,* 544 US 622; *United States v Edelin,* 175 F Supp 2d 1; *People v Stokes,* 290 AD2d 71.) III. Defendant was not prejudiced by wearing the belt. (*United States v Miller,* 531 F3d 340; *People v Paul,* 229 AD2d 932; *People v Gilmore,* 12 AD3d 1155; *People v Burton,* 278 AD2d 910; *People v Allaway,* 13 AD3d 715; *People v Benito,* 256 AD2d 221; *People v Abrams,* 203 AD2d 723; *United States v McKissick,* 204 F3d 1282.)

Per Curiam.

We hold that a stun belt may not be used to restrain a defendant in a criminal case without a finding of specific facts justifying the use of such a restraint.

## I

Defendant was charged with the murder, by strangulation, of a 14-year-old girl. After jury selection and before opening statements, the trial judge said "it is my policy in cases of this nature, this degree of seriousness, to have the defendant either in leg shackles, which I don't like to do, or the belt that can deliver a shock should there be a problem." Addressing defendant directly, the court added: "I do believe it is necessary not just for you . . . . This is something I would do for anybody charged with murder." Defendant's counsel and defendant himself objected strenuously. When defendant said, "I have done nothing to warrant this," the court replied: "I can't disagree with you. You have not done anything to warrant that." But the court decided to require a stun belt "in the interest of being overly cautious for security." The court also asked an officer who was present: "The Sheriff's Department's position is you would like that to remain on?", to which the officer answered, "Yes."

At the end of the first day of trial, defendant complained that the belt was uncomfortable, and the court ordered that he be examined. At the beginning of the next trial day, the court said it had received a report to the effect that the defendant "has no medical reason not to use the shock belt" and ordered the belt kept on. To defendant's continued protests, the court replied that it had to rely on "the security experts," and again assured defendant that the court's ruling was nothing personal; the court said that even "an innocent man on trial for murder" could be dangerous. Defendant thus wore a stun belt under his clothing for the duration of his trial.

Defendant was convicted of second degree murder, and the Appellate Division affirmed, with two Justices dissenting (53 AD3d 46 [2008]). An Appellate Division Justice granted leave to appeal, and we now reverse.

## II

Defendant argues that the use of the stun belt deprived him of due process of law, relying on *Deck v Missouri* (544 US 622,

626 [2005]), in which the United States Supreme Court held that the Due Process Clause prohibits a state from confining a defendant in "visible shackles" during a criminal trial, unless a "special need," based on facts specific to the case, is shown. The People argue that *Deck* is distinguishable because the stun belt here was not visible to the jury. We need not reach the constitutional issue, however, for we conclude as a matter of New York law that it is unacceptable to make a stun belt a routine adjunct of every murder trial, without a specifically identified security reason.

We have no doubt that there are cases in which a court may properly find, considering the nature of the charged offense, the defendant's history and other relevant factors, that a stun belt is necessary, but those factors must be considered before that finding is made. Thus, we adopt the rule that a stun belt may not be required unless the trial court makes findings on the record showing that the particular defendant before him needs such a restraint. A formal hearing may not be necessary, but the trial court must conduct a sufficient inquiry to satisfy itself of the facts that warrant the restraint. Where it does so, a trial court has broad discretion in deciding whether a restraint is necessary for courtroom security.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

READ, J. (dissenting). I agree with the majority that the trial judge in this case should have explained on the record why, to safeguard courtroom security, he ordered defendant to wear a stun belt during trial. In this case, however, the presumption of innocence was not implicated by the judge's failure to inquire about the particular need for use of a stun belt and to make factual findings on the record. Defendant—a man in his thirties who apparently stands more than six feet tall and weighs over 300 pounds—repeatedly protested that the stun belt was uncomfortable (a complaint that the judge ordered a physician to evaluate), and that he should not have to wear this restraint because he was presumed to be innocent. But defendant failed to show that the stun belt was visible to the jury or otherwise compromised the fundamental fairness of the trial; he never objected that the stun belt impaired his ability to communicate with his attorney or meaningfully participate in his defense. Since I therefore do not believe that defendant has shown any actual prejudice, I would affirm his conviction (*see e.g. State v Bowen*, 340 Or

487, 496, 135 P3d 272, 279 [2006], *cert denied* 549 US 1214 [2007]).

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur in per curiam opinion; Judge READ dissents and votes to affirm in a separate opinion.

Order reversed, etc.