# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 73  SSM 5
The People &c.,
        Respondent,
    v.
Daniel Bradford,
        Appellant.

Submitted by Thomas P. Theophilos, for appellant.
Submitted by John Tunney, for respondent.

MEMORANDUM:

The Appellate Division order should be reversed and the matter remitted to County

Court for further proceedings in accordance with this memorandum.

It is undisputed that sheriff officials required defendant to wear a stun belt at trial, that neither the People nor the trial court were aware of that fact, and that defendant failed to preserve any argument concerning the stun belt. Because the trial court did not articulate a particularized need for defendant to wear a stun belt, the use of that restraint was error (*see People v Buchanan*, 13 NY3d 1, 4 [2009]). However, this flaw was not a mode of proceedings error (*see People v Cooke*, 24 NY3d 1196, 1197 [2015], *cert denied* 577 US 1011 [2015]; *People v Schrock*, 108 AD3d 1221, 1225-1226 [4th Dept 2013], *lv denied* 22 NY3d 998 [2013]).[1] The courts below thus did not abuse their discretion by summarily denying the portion of defendant's CPL 440.10 motion based on his unpreserved assertion of a *Buchanan* error, which could have been raised before the trial court.

The courts below erred by summarily denying the portion of defendant's motion concerning his ineffective assistance of counsel claim. Given the conceded *Buchanan* violation, factual issues exist concerning trial counsel's effectiveness. For instance, County Court should determine if counsel had a legitimate explanation for declining to

---

[1] The dissent's contrary conclusion is based on a misreading of *Cooke*. In that case, as here, "non-judicial personnel" determined that the defendant should wear a stun belt at trial unbeknownst to the county court (*People v Cooke*, 119 AD3d 1399, 1402 [4th Dept 2014] [Fahey, J., concurring]). The dissent here says that there was no mode of proceedings error in *Cooke* because the defendant there "retroactive[ly]" consented to wearing a stun belt even though "the trial court was initially unaware that the defendant had been made to wear" it (dissenting op at 6). But "[m]ode of proceedings errors are not waivable" and "require reversal even if the defense affirmatively consents to the court's action" (*People v Mack*, 27 NY3d 534, 543 [2016]). If the dissent's mode of proceedings error analysis was correct, the defendant in *Cooke* could not have retroactively consented to the non-judicial personnel's "usurpation of the [trial] court's authority to determine the need for a stun belt" (dissenting op at 7 n 6 [emphasis omitted]). Instead, the error would have required "automatic reversal" (*Mack*, 27 NY3d at 540).

object. There has been no hearing concerning whether defendant voiced his concerns about wearing the stun belt to his trial attorney as he contends (*see People v Stultz*, 2 NY3d 277, 284 [2004] ["An appellate court cannot fault the attorney until after the nonrecord proof has been aired"]). Further, defendant submitted evidence in support of his motion which raises factual questions as to whether he consented to wearing the stun belt at trial (*see Cooke*, 24 NY3d at 1197).[2] Defendant's ineffective assistance claim should be decided under the applicable standard (*see People v Benevento*, 91 NY2d 708, 712-713 [1998]) on a full record following a hearing (*see* CPL 440.30 [5]).[3]

---

[2] There has been no hearing in this matter and, thus, neither County Court nor the Appellate Division made any "factual finding" concerning whether defendant consented to wearing the stun belt (dissenting op at 10 n 8). Nor has any court addressed consent "as a legal matter" (*id.*). Rather, the Appellate Division concluded that a hearing was unnecessary even accepting petitioner's factual allegations.

[3] Defendant does not argue that use of stun belts should be abolished and, thus, we do not address that topic.

RIVERA, J. (dissenting):

Defendant challenges the Sheriff Department's forcible imposition of a stun belt throughout his trial, without the court's knowledge or approval. A stun belt is a battery-operated device which "fit[s] around the waist" and is capable of delivering "a 50,000- to 70,000-volt surge through [the wearer], causing immediate loss of muscular control and incapacitation" (Jonathan Turley, *Torture at the Push of a Button*, Washington Post [Aug

- 1 -

28, 2003], available at https://www.washingtonpost.com/archive/opinions /2003/08/28/torture-at-the-push-of-a-button/0c962af1-de74-41cf-9a0d-948a369852b0/ [last accessed May 18, 2023]).[1] More than twenty years ago, the United Nations Committee Against Torture called for abolition of the device, suggesting that its use may violate the international treaty against torture (Elizabeth Olson, *U.S. Prisoner Restraints Amount to Torture, Geneva Panel Says*, NY Times [May 18, 2000], available at https://www.nytimes.com/2000/05/18/world/us-prisoner-restraints-amount-to-torture-geneva-panel-says.html [last accessed May 18, 2023]). This Court has recognized that stun belts carry a "known potential for extremely painful and humiliating physical effects" (*People v Cruz*, 17 NY3d 941, 945 n * [2011]) and has set procedural safeguards around their use (*see generally People v Buchanan*, 13 NY3d 1 [2009]).

Those procedural safeguards were not followed here when the Sheriff's Department usurped the trial court's authority to determine the necessity of a stun belt and mandated defendant wear the physical restraint. Unlike the majority, I conclude that this is a mode of proceedings error and that no factual questions remain regarding defense counsel's ineffectiveness for failing to object to the belt's use. Therefore, there is no basis to remit

---

[1] Amnesty International issued a report on the deleterious effects of stun belts, finding that "[o]n activation, the belt delivers a 50,000 volt, three to four milliampere shock which lasts eight seconds. This high-pulsed current enters the wearer's body at the side of the electrodes, near the kidneys, and passes through the body, causing a rapid electric shock. The shock causes incapacitation in the first few seconds and severe pain rising during the eight seconds. The electro-shock cannot be stopped once activated" (*USA: Cruelty in Control? The Stun Belt and Other Electro-Shock Equipment in Law Enforcement*, Amnesty International June 1999 at 3-4, available at https://www.amnesty.org/en/ documents/amr51/054/1999/en/ [last accessed May 18, 2023]).

this matter for further proceedings, and I would reverse the conviction and remand the case for a new trial.

## I.

In 2011, defendant Daniel Bradford was convicted upon a jury verdict of murder in the second degree, multiple counts of criminal contempt, and offering a false instrument for filing. He was sentenced to a term of imprisonment of 23 years to life.[2] In 2020, defendant moved pro se to vacate his convictions under CPL 440.10, arguing that he was improperly forced to wear a stun belt throughout his trial. In his supporting affidavit defendant alleged that on the morning his trial commenced, Sheriff's deputies brought him from his jail cell to the booking area, where the deputies placed a stun belt on the counter and explained that it would deliver an electric shock to the wearer when activated. They activated the belt so that defendant could see it sparking and then presented him with a form explaining the function of the belt and told him he was required to sign it.[3] Defendant complied and was fitted with the belt. When defendant asked his attorney why he was being required to wear it, his attorney replied that it was the Sheriff's Department's policy and

---

[2] On defendant's direct appeal, the Appellate Division found "a discrepancy between the sentencing minutes and the certificate of conviction" requiring vacatur of the sentences on several counts and reversal of the conviction for offering a false instrument. On remittal County Court resentenced defendant to 23 years to life on the second-degree murder conviction and a consecutive two- to four-year sentence on criminal contempt. The Appellate Division affirmed the resentence and held that it could not review defendant's repeated ineffective assistance of counsel claims (138 AD3d 1436 [4th Dept 2016]), although the earlier claims were based on conduct unrelated to the stun belt issue.

[3] Defendant was presented with this same notice on each day of his trial.

there was nothing he could do about it. A deputy overheard the exchange and interjected that the belt was standard policy and defendant was required to wear it. Defendant averred that the belt's prongs stuck into his skin and caused welts by the end of each day, and that throughout the trial deputies sat next to him with an activation button, causing him to worry that the belt might be activated. Defense counsel never raised the issue to the court.[4]

County Court denied defendant's CPL 440.10 motion without a hearing, concluding that the use of a stun belt is not a constitutional issue and is therefore waivable, and that trial counsel was not ineffective for failing to object to the use of the belt. The Appellate Division affirmed over a two-justice dissent (*People v Bradford*, 204 AD3d 1483 [4th Dept 2022]). Citing *People v Cooke* (24 NY3d 1196 [2015]), the majority held that "improper use of a stun belt is not a mode of proceedings error" and therefore "the failure to object to [its] use means that reversal would not have been required on a direct appeal" (204 AD3d at 1484). The majority also rejected defendant's ineffective assistance of counsel claim, holding that defendant did not establish that the belt was visible to the jury and therefore did not "make a sufficient showing of egregiousness or that his right to a fair trial was compromised" (*id*. at 1485). The dissenters would have reversed and remitted for a hearing on the ineffective assistance claim on the ground that the trial "court erred in summarily

---

[4] According to defendant his appellate counsel informed him that the matter could not be litigated on direct appeal because there was no mention of it in the record.

denying defendant's CPL 440.10 motion" (*id*. at 1487). One of the dissenting justices granted leave to appeal.[5]

## II.

Defendant contends that it was a mode of proceedings error for the Sheriff's Department to require him to wear a stun belt without the trial court's knowledge because non-judicial court personnel may not assume judicial responsibilities. I agree.

A mode of proceedings error goes "to the essential validity of the process and [is] so fundamental that the entire trial is irreparably tainted" (*People v Kelly*, 5 NY3d 116, 120-121 [2005]). Those errors are "immune not only from the rules governing preservation and waiver but also from harmless error analysis" and "require reversal without regard to the prejudice, or lack thereof, to the defendant" (*People v Mack*, 27 NY3d 534, 540 [2016]). We have previously recognized a mode of proceedings error where a court "delegat[es] [its] function" or "discharge[s] some of [its] duties" to a non-judicial official (*People v Ahmed*, 66 NY2d 307, 312-313 [1985]).

The Court has held that while "there are cases in which a court may properly find, considering the nature of the charged offense, the defendant's history and other relevant factors, that a stun belt is necessary" for courtroom security, "a stun belt may not be required unless the trial court makes findings on the record showing that the particular defendant before [it] needs such a restraint" (*Buchanan*, 13 NY3d at 4). We clarified in

---

[5] On appeal to this Court, defendant has not pressed a state constitutional challenge to the validity of stun belt restraints. Therefore, I have no occasion to address that issue.

*Cooke* that a court's imposition of a stun belt without the requisite finding does not amount to a mode of proceedings error (*see* 24 NY3d at 1197), but sheriff's deputies are not judges.

Contrary to the view of the majority, *Cooke* does not control this case or foreclose defendant's argument that a mode of proceedings error occurred. That decision did not reference the precise issue presented by defendant; it simply cited *People v Schrock* (108 AD3d 1221 [4th Dept 2013]) in a string cite for the proposition that a "trial court's failure to make a finding of necessity for [a] stun belt's use does not constitute an unwaivable mode of proceedings error" (*Cooke*, 24 NY3d at 1197). However, the asserted mode of proceedings error in this appeal is not simply the court's failure to make the relevant finding but "the Sheriff's unilateral decision to require defendant to wear a stun belt during trial without the knowledge of the court" (*Schrock* at 1226 [Fahey, J., dissenting]).

Significantly, *Cooke* is factually distinguishable from defendant's appeal. There, the trial court was initially unaware that the defendant had been made to wear a stun belt and consented to its use. At the end of the first day of proof, the court excused the jury and held an unrecorded sidebar. When the parties went back on the record, defense counsel stated that the defendant had been wearing a stun belt since the beginning of trial and that, although there had been no judicial finding of necessity, the defendant consented to the belt and the consent was retroactive to the beginning of trial. The court then asked defendant directly whether he agreed to wear the belt. When defendant confirmed, the court stated that it would not be making any finding of need for the belt because that finding had not been requested. In other words, in *Cooke* there was no delegation or usurpation of judicial authority, because the defendant's retroactive consent negated the court's initial

obligation to make a finding of necessity. That consent was the basis, in part, for our

affirmance (*see* 24 NY3d at 1197 [as defendant "expressly consented to wearing a stun belt

at trial, he waived his contention that he was denied a fair trial on the ground that he was

restrained"]).

Here, by contrast, the trial court was never aware that defendant was wearing a stun

belt and defendant never consented to its use. The decision to require defendant to wear

the belt—a decision that belongs solely to the court—was made by the Sheriff's

Department pursuant to its standing policy, and not in response to a specific security

concern regarding defendant. *Schrock* is factually similar, except that the defendant there

"advised [counsel] that he was wearing the stun belt" but "did not complain about it,"

suggesting that he may have consented to its use (108 AD3d at 1222).[6] Then-Justice Fahey

dissented, arguing that "the *usurpation* of the court's power to determine whether to require

---

[6] Although it seems unfathomable that a defendant would voluntarily agree to such an inhumane form of restraint, a defendant may knowingly consent to the use of a stun belt before trial and preemptively relieve the court of its duty to make a finding as to the need for the restraint. In the absence of that pre-trial consent, however, a court's failure to make a finding of need is error. Unlike in *Cooke*, defendant here did not consent to relieve the court from its obligation, and unlike in *Schrock*, he alleges that he registered his objection to his attorney. The majority misstates my basis for distinguishing *Cooke* (majority op at 2 n 1). It is not my view that "there was no mode of proceedings error in *Cooke* because the defendant there 'retroactive[ly]' consented to wearing a stun belt," nor do I mean that defendant's retroactive consent could have cured a mode of proceedings error (*id*.). Instead, as I explain, this case involves a mode of proceedings error whereas *Cooke* did not. The mode of proceedings error here is the *usurpation of the court's authority to determine the need for a stun belt*, not the court's failure to make a necessity determination. As to consent, a defendant cannot consent to the sheriff's deputies acting in the place of the judge (a mode of proceedings error), but as we held in *Cooke*, a defendant can consent to wearing a stun belt and thus waive a different ground for reversal, i.e. that imposition of the restraint denies them a fair hearing (24 NY3d at 1197).

defendant to wear a stun belt is no different from the *delegation* of court powers found to have constituted mode of proceedings errors" (*id.* at 1227 [Fahey, J., dissenting] [emphases in original]).[7] As he explained, "[t]he error [] lies not in the fact that defendant had to wear a stun belt, but in the fact that the Sheriff usurped the power of the court to make a determination regarding the use of the stun belt to restrain defendant" (*id.*). I find our former colleague's reasoning sound. The Sheriff's actions denied the court the opportunity to "exercise[ ] full and proper control over the application of that device to defendant" (*id.*), and that usurpation strikes at the heart of the integrity of the judicial process. Quite simply, "[w]e cannot allow court personnel or law enforcement officers to exercise powers reserved to the court" (*id.*).

## III.

Defendant also contends that counsel was ineffective for failing to object to the unjustified use of the stun belt. I disagree with the majority that there exist outstanding factual issues that require remittal (majority op at 2).

There is no question of fact as to whether defendant's signed notices provided evidence that he consented to wearing the stun belt (majority op at 3). In his CPL 440.10 motion and Appellate Division brief, defendant repeatedly asserted that he was "forced" to wear the stun belt. In response to the motion, the District Attorney conceded that the use

---

[7] The Fourth Department has repeatedly rejected that view (*see id.* at 1224; *People v Osman*, 174 AD3d 1477, 1479-1480 [4th Dept 2019], *lv denied* 34 NY3d 1080 [2019]; *People v Ashline*, 124 AD3d 1258, 1259 [4th Dept 2015], *lv denied* 27 NY3d 1128 [2016]).

of the stun belt without the knowledge or involvement of the court was error—though harmless and unpreserved—and then further conceded before the Appellate Division that "based on the exhibits attached to [the 440.10] motion, it appears that, indeed, the belt was required by the Sheriff's department to be used as a security device during the trial." Thus, the District Attorney did not controvert defendant's representation that he was forced to wear the belt but instead accepted it as fact, and has never argued that defendant gave his express consent to wear the stun belt nor that consent is a ground for rejecting his CPL 440.10 motion. Indeed, the word "consent" does not appear in the District Attorney's submissions to the motion court, the Appellate Division, or this Court. To the extent the majority suggests the District Attorney may argue otherwise on remittal, it is well established that a party "is precluded from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding" (*Maas v Cornell Univ.*, 253 AD2d 1, 5 [1999] *affd* 94 NY2d 87 [1999]). Any doubt that defendant was in fact involuntarily compelled to wear the stun belt—and that the parties and courts understood the same—is laid to rest by the Appellate Division's determination that defendant "established that he was *forced* to wear a stun belt" (*People v Bradford*, 204 AD3d 1483, 1484 [4th Dept 2022] [emphasis added]). Forcing or requiring defendant to wear the belt necessarily means that defendant did not consent. That determination is binding.[8]

---

[8] The Appellate Division did not decide the issue merely by accepting defendant's factual allegations (majority op at 3 n 2), but rather made an unambiguous determination that he "established that he was forced to wear a stun belt" (204 AD3d at 1484). The majority seeks to avoid this inconvenient truth: the Appellate Division's determination cannot be revisited

Nor is there an open question as to whether counsel had a strategic or otherwise legitimate reason for failing to object to the belt. That decision belongs solely to the defendant and counsel cannot choose to ignore or override a defendant's objection. Decisions that are "personal" and "fundamental" belong to the accused (*People v Colville*, 20 NY3d 20, 31 [2012]), while trial strategy and tactical decisions are the purview of lawyers (*see People v Hogan*, 26 NY3d 779, 786 [2016]). However, the United States Supreme Court has recognized that, given the "physical burdens" and "pains" associated with restraints, along with their tendency to "confuse and embarrass" a defendant's "mental faculties," physical restraints "tend 'materially to abridge and prejudicially affect [the] constitutional rights'" of the accused (*Deck v Missouri*, 544 US 622, 631 [2005], quoting *People v Harrington*, 42 Cal 165, 168 [1871]). Stun belts are a particularly barbaric form of restraint (*see* Olson, *supra*). Thus, whether to object to physical restraints—handcuffs, shackles or stun belts—implicates defendant's bodily integrity and the right to a fair trial. The majority is incorrect that counsel may have "had a legitimate explanation for declining

---

on remittal. If the determination is a factual finding, it is binding upon this Court and the lower courts (*see People v Garvin*, 30 NY3d 174, 184 [2017]; *Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499 [1983] [the Appellate Division has factfinding authority which "is as broad as that of the trial court"]; *see* CPLR 5501 [c]). Alternatively, if the Appellate Division found as a legal matter that defendant was forced to wear the stun belt, then that determination is the law of the case and likewise binds the motion court upon remand (*see People v Evans*, 94 NY2d 499, 503 [2000] ["The term 'law of the case' is [sometimes used] to describe the doctrine requiring a lower court, on remand, to follow the mandate of the higher court" but primarily refers to the "the practice of courts generally to refuse to reopen what has been decided"]). Thus, no matter how the Appellate Division's language is interpreted, there is no basis for this Court to reject or revisit its determination.

to object" (majority op at 2-3). Counsel cannot refuse to present their client's objection to the court. Nor may counsel waive this fundamental right against their client's wish. That decision belongs to the only person who bears the physical consequences and mental anguish of wearing a stun belt—the defendant.

IV.

The forcible imposition of a stun belt upon defendant without the knowledge or direction of the court was a fatal error which tainted the integrity of the judicial process and requires reversal. Even if the actions of the Sheriff's Department did not constitute a mode of proceedings error, I would reverse on defendant's alternative ground that counsel was ineffective for failing to object to the forced use of the stun belt. Because defendant did not consent to imposition of the stun belt and because defense counsel could not refuse to present his client's objection to the court, there is no basis for remittal. Therefore, I would reverse and remand for a new trial.

On review of submissions pursuant to section 500.11 of the Rules, order reversed and matter remitted to County Court, Steuben County, for further proceedings in accordance with the memorandum herein. Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs. Judge Troutman took no part.

Decided June 13, 2023