People v Ferrer (2024 NY Slip Op 00947)

People v Ferrer

2024 NY Slip Op 00947

Decided on February 22, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 22, 2024

112809 , 113180
[*1]The People of the State of New York, Respondent,
v
Alex M. Ferrer, Appellant.

Calendar Date:January 17, 2024

Before:Aarons, J.P., Pritzker, Lynch, Fisher and Mackey, JJ.

G. Scott Walling, Slingerlands, for appellant.
F. Paul Battisti, District Attorney, Binghamton (Benjamin E. Holwitt of counsel), for respondent.

Mackey, J.
Appeals (1) from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered August 3, 2021, upon a verdict convicting defendant of the crime of burglary in the second degree (two counts), and (2) by permission, from an order of said court, entered September 24, 2021, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged by indictment with two counts of burglary in the second degree in connection with two home invasions in Broome County that occurred in March 2020. Defendant subsequently moved to dismiss the indictment due to purported defects in the grand jury proceeding, which motion County Court denied. Following a jury trial, defendant was found guilty as charged. He was sentenced, as a second violent felony offender, to an aggregate prison term of 15 years, to be followed by five years of postrelease supervision. Defendant then moved to vacate the judgment pursuant to CPL 440.10, on the ground of, among other things, ineffective assistance of counsel. County Court denied the motion pursuant to CPL 440.30 (4) (a) and (b) without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant initially challenges the integrity of the grand jury proceeding, contending that the People violated his rights by not informing the grand jury of his request to have certain witnesses testify on his behalf pursuant to CPL 190.50 (6). Having failed to raise this specific contention in his motion to dismiss the indictment, the argument has not been preserved for our review (see CPL 210.20 [3]; People v Bickham, 189 AD3d 1972, 1975 [3d Dept 2020], lv denied 36 NY3d 1095 [2021]; People v Brandon, 133 AD3d 901, 902 [3d Dept 2015], lv denied 27 NY3d 992 [2016]; People v Whitehead, 119 AD3d 1080, 1081 [3d Dept 2014], lv denied 24 NY3d 1048 [2014]). In any event, a review of the record reveals that the proposed testimony was either duplicative or not exculpatory (see generally People v Adessa, 89 NY2d 677, 686 [1997]). As such, "there [was] no showing that, in the absence of the complained-of misconduct, the grand jury might have decided not to indict . . . defendant" (People v Wilcox, 194 AD3d 1352, 1356 [4th Dept 2021] [internal quotation marks and citation omitted]).
The jury verdict is not against the weight of the evidence. As relevant here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]; see People v Jones, 215 AD3d 1123, 1124 [3d Dept 2023], lv denied 40 NY3d 935 [2023]). "A person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so" (Penal Law § 140.00 [5]). The requisite "intent may be inferred from the circumstances of the intruder's unlawful [*2]entry, unexplained presence on the premises, and actions and statements when confronted by police or the property owner" (People v Vasquez, 71 AD3d 1179, 1180 [3d Dept 2010] [internal quotation marks and citations omitted], lv denied 14 NY3d 894 [2010]; see People v Oliveras, 203 AD3d 1233, 1238 [3d Dept 2022], lv denied 38 NY3d 1073 [2022]). Notably, " 'the intent necessary for burglary can be inferred from the circumstances of the entry itself' " (People v Kelly, 202 AD3d 1158, 1160 [3d Dept 2022], lv denied 38 NY3d 1034 [2022], quoting People v Mackey, 49 NY2d 274, 280 [1980]).
As to the first home invasion, the People elicited testimony that on March 25, 2020, a male resident returned to his apartment on Delaware Avenue in the City of Binghamton, Broome County and found defendant and defendant's then-girlfriend, Tanna Clark, inside. The resident noticed that some of his things were out of place and something was painted on his refrigerator. According to the resident, defendant told him he was in the apartment "cleaning," but the resident never hired anyone to clean the apartment, nor did he give anyone permission to be inside his locked apartment. The resident called his landlord and the police. After the State Police arrived, the resident discovered that defendant and Clark had eaten his food, painted on his refrigerator, thrown some of his clothes out by the dumpster, and that there was damage to his front door "like someone was in there trying to get the lock open." Defendant and Clark were arrested, processed and released by the State Police the same day.
After being released, defendant and Clark took a bus to downtown Binghamton and walked over the Main Street Bridge. Defendant told Clark that they were "going to get some weed from a friend," so they went to an apartment on Main Street. Upon finding the door of the apartment locked, the two went up the fire escape around back of the building and knocked on the door. When no one answered that door, defendant "crawled on the roof and . . . climbed through the window." Defendant let Clark inside after leaving her alone outside for "five, ten minutes." Clark did not know who lived in the Main Street apartment, nor was she familiar with it. Once inside the apartment, Clark saw a knife in the door frame of a bedroom to the right. The other bedroom doors were open. Defendant handed Clark a jacket and a hat, along with other property that came from inside the apartment, and Clark grabbed a flashlight to help her see. Defendant then used the knife to open the remaining bedroom door. After the door was open, Clark saw a camera that "blinked a little, like a red light." Defendant unplugged the camera.
As the two were leaving the Main Street apartment, they split up. They were followed by two residents of the Main Street apartment building (hereinafter resident A and resident B), who were alerted to the presence of intruders by the resident of the bedroom with the camera, who was not present but had [*3]received a notification from the camera on his phone. Resident A followed Clark, while resident B followed defendant. Resident A caught Clark, who was wearing a hat that resident A recognized as belonging to one of his friends, who also lived at the Main Street apartment. Clark apologized and handed resident A "some items that she took from the house." Resident B, carrying a golf club, followed defendant, who was carrying some bags. Defendant turned to go down Front Street, and when resident B made that turn, the bags defendant had been carrying were left on the sidewalk. Resident B flagged down a City of Binghamton police officer and told him defendant had "broke[n] into [his] house." The police officer radioed a description of defendant to other officers in the area. Resident B was able to identify items in the bags defendant had been carrying as coming from the Main Street apartment. Another Binghamton police officer responded to the area for a "burglary in progress" call and he encountered defendant "[m]aybe .3 miles [three-tenths of a mile]" from Main Street. During a "showup," resident B identified both defendant and Clark as the individuals who he saw leave the Main Street apartment.
After the showup identification, defendant was interviewed by an investigator with the Binghamton Police Department. During the interview, defendant admitted to entering the two apartments, but stated that he was merely looking for somewhere warm to sleep. Defendant's written statement indicated that he has a stealing problem, enjoys stealing from stores, but had not forcibly entered any buildings or apartments to steal. According to Clark, upon entering the residences, she and defendant had no intent to take any property; rather they merely wanted to find a place to get out of the cold and spend the night.[FN1]
Based on the foregoing, although another verdict would not have been unreasonable had the jury believed Clark's testimony at trial and defendant's written statement that they did not intend to steal anything upon entering the two residences, when viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we find that the jury's verdict is supported by the weight of the evidence (see People v Cason, 203 AD3d 1309, 1314 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]; People v Oliveras, 203 AD3d at 1238; People v Hajratalli, 200 AD3d 1332, 1336 [3d Dept 2021], lv denied 38 NY3d 1033 [2022]).
We do agree with defendant, however, that County Court erred in denying his CPL 440.10 motion without conducting a hearing as to whether his counsel was ineffective for failing to object to the use of an electric stun belt restraint on defendant during the trial. As relevant here, CPL 440.30 (4) permits summary denial of a CPL article 440 motion where "(a) [t]he moving papers do not allege any ground constituting legal basis for the motion; or (b) [t]he motion is based upon the existence or occurrence of facts and the moving [*4]papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts" (CPL 440.30 [4] [a], [b]). A hearing is required, however, where the defendant's "submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief" (People v Gassner, 193 AD3d 1182, 1185 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 956 [2021]). Here, the motion court abused its discretion by summarily denying defendant's CPL 440.10 motion because defendant's affidavit in support of the motion contained sworn allegations to the effect that, throughout the trial, he was required to wear an "electric shock box" on his leg; that he informed his trial counsel of the stun belt restraint; that his counsel assured him that he would address the issue with the court; and that no objection to the stun belt restraint was ever interposed at trial. Notably, in People v Bradford (40 NY3d 938 [2023]), the Court of Appeals addressed a case where the defendant, unbeknownst to the People or the trial court, was required by sheriff officials to wear a stun belt at trial. The Court found this to be a clear Buchanan error (People v Buchanan, 13 NY3d 1, 4 [2009]), as the trial court did not articulate a particularized need for the defendant to wear a stun belt (see People v Bradford, 40 NY3d at 939). Although the issue was unpreserved for appellate review, the Court held that so much of the defendant's CPL 440.10 motion as alleged ineffective assistance, based on trial counsel's failure to object to his wearing the stun belt, should have been decided under the applicable standard on a full record following a hearing (see id. at 940).
Here, there is no dispute that defendant was required to wear a stun belt during his jury trial and that County Court failed to make the requisite finding that there was a "specifically identified security reason" for restraining defendant in such a significant manner (People v Buchanan, 13 NY3d at 4). Defendant's motion therefore set forth sufficient facts tending to substantiate his claim that he was denied effective assistance of counsel, and we therefore agree with defendant that County Court erred in denying that claim without a hearing (see CPL 440.30 [4] [b]; [5]).
Aarons, J.P., Pritzker, Lynch and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.
ORDERED that the order is modified, on the law, by reversing so much thereof as denied the portion of defendant's motion predicated upon a claim of ineffective assistance of counsel; matter remitted to the County Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: In exchange for testifying against defendant, Clark pleaded guilty to the burglarycharges and received a sentence of five years of probation.