People v Ferrer

2026 NY Slip Op 02304

April 16, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Alex M. Ferrer, Appellant.

Decided and Entered:April 16, 2026

CR-24-1367

Calendar Date: February 11, 2026

Before: Garry, P.J., Aarons, Ceresia, Fisher And Mackey, JJ.

G. Scott Walling, Slingerlands, for appellant.

F. Paul Battisti, District Attorney, Binghamton (Mary E. Saitta of counsel), for respondent.

[*1]

Fisher, J.

Appeal, by permission, from an order of the County Court of Broome County (Joseph Cawley, J.), entered July 3, 2024, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of burglary in the second degree (two counts), after a hearing.

In 2020, defendant was charged by indictment with two counts of burglary in the second degree in connection with two home invasions. Following a jury trial, defendant was found guilty as charged and sentenced to a term of incarceration, to be followed by a period of postrelease supervision. Defendant subsequently moved to vacate the judgment of conviction under CPL 440.10 on several grounds, including ineffective assistance of counsel. County Court (Dooley, J.) denied the motion, without a hearing. Defendant appealed from the judgment of conviction and, by permission, the denial of his CPL article 440 motion. This Court affirmed defendant's conviction on the direct appeal, and modified the order denying his CPL article 440 motion, remitting the matter to County Court to conduct a hearing on the issue "as to whether [defense] counsel was ineffective for failing to object to the use of an electric stun belt restraint on defendant during the trial" (224 AD3d 1092, 1096 [3d Dept 2024], lv denied 41 NY3d 1018 [2024]).

At the ensuing hearing before County Court (Cawley, J.), the undisputed evidence established that defendant was classified as a high security risk by the Broome County Sheriff's office (hereinafter BCSO). As a result of such classification, defendant was required to wear a stun cuff attached to his lower leg underneath his clothing, for which he signed two BCSO acknowledgement forms advising him of the device's capabilities, purpose and when it would be activated by deputies.FN1 In addition, members of the Sheriff's Emergency Response Team (hereinafter SERT) maintained a presence around defendant in the courthouse — remaining near him during the testimonial portions of the trial. Although County Court (Dooley, J.) was not advised of the stun cuff on defendant's leg and therefore did not perform the requisite Buchanan inquiry (see People v Buchanan, 13 NY3d 1, 4 [2009]), the court was alerted by a court officer that jurors were inquiring why there were BCSO deputies in the courtroom and what "SERT" meant on their uniforms/vests. Following a conference with the attorneys in defendant's presence, and adopting requests from defense counsel, County Court issued curative instructions to the jury that the security arrangements were not relevant to their deliberations and should play no role in their determination, and that no independent research was permitted.

The disagreement in the record distills to whether defendant told defense counsel about the stun cuff on his leg. Defendant testified at the hearing that he told defense counsel before jury selection about the stun cuff and that it was hurting him, and that defense counsel assured defendant that he would raise [*2]the issue with County Court but ultimately did not do so. Defendant further testified that he raised it again with defense counsel, who was more dismissive of him because it was understood to be part of BCSO policy. Defendant claims defense counsel's failure to object to the stun cuffhad a chilling effect on his participation during the trial — dissuading him from testifying on his own behalf because he did not want to be erroneously shocked or for the jurors to see the "bulge" caused by the device under his clothing. In contrast, defense counsel testified that he was not told about the stun cuff, which was a device that he did not know existed and had never seen before in his approximately 35 years of experience practicing law. Although defense counsel recalled quite a bit of security for defendant's trial, he explained that he had observed SERT officers in a few other trials and did not question it. He further testified that, by virtue of the SERT officers being present in the courtroom, he would not have thought there were other additional security measures in place. A sergeant for the BCSO also testified on behalf of the People, explaining the dimensions of the stun cuff and averring that it was not visible under clothing.FN2 Due to this, the sergeant explained that a stun cuff was used as an alternate means when shackles and handcuffs were not permissible in a location — such as in a courtroom due to the presumption of innocence.

County Court (Cawley, J.), crediting the testimony of defense counsel over defendant, rejected defendant's explanation that the stun cuff compelled him to not testify because defendant repeatedly stood up in front of the jury to attend all side bar conferences during the trial, and therefore found that defendant's right to a fair trial had not been impaired. County Court also found that defense counsel was not advised of the use of a stun cuff on defendant during the trial, did not see the device and otherwise was unaware that such a device even existed, which we interpret to be a finding that defendant's trial counsel had a legitimate explanation for not raising an objection as to the use of a stun cuff. Based on these findings, and when viewing the totality of defense counsel's representation, County Court concluded that defendant was afforded meaningful representation and denied defendant's motion to vacate the judgment of conviction. Defendant, by permission, appeals.

Defendant contends that County Court erred in denying his ineffective assistance of counsel claim because defense counsel failed to challenge the conceded use of a stun cuff on defendant during the trial without an identified security reason — a so-called Buchanan violation (see People v Buchanan, 13 NY3d at 4) — and there was no legitimate explanation for declining to object (see People v Bradford, 40 NY3d 939, 939-940 [2023]). When seeking to vacate a judgment under CPL article 440, a defendant has "the burden of proving by a preponderance of the [*3]evidence every fact essential to support the motion at a hearing thereon" (People v Dunham, 231 AD3d 1437, 1438 [3d Dept 2024] [internal quotation marks and citation omitted], lv denied 43 NY3d 963 [2025]). To prevail on an ineffective assistance claim, "a defendant must establish that counsel failed to provide meaningful representation and thus deprived defendant of a fair trial" (People v Clark, 28 NY3d 556, 562 [2016]). A single error can rise to the level of ineffective assistance, but only where the issue is "so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could not have been grounded in legitimate . . . strategy" (People v Kent, 235 AD3d 1094, 1096 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 964 [2025]). The onus is on defendant to demonstrate "the absence of strategic or other legitimate explanations . . . for the alleged deficiencies of counsel" (People v Maffei, 35 NY3d 264, 269 [2020] [internal quotation marks and citations omitted]). Although under the NY Constitution "a showing of prejudice is a significant but not indispensable element" (People v Salas, 44 NY3d 374, 383 [2025] [internal quotation marks, brackets and citation omitted]), we nevertheless "remain skeptical of ineffective assistance of counsel claims where the defendant is unable to demonstrate any prejudice at all" (People v Alvarez, 33 NY3d 286, 290 [2019] [internal quotation marks and citation omitted]).

Here, according "great deference on appeal" to the factual findings and credibility assessments of County Court (People v Ayala, 194 AD3d 1255, 1257 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 970 [2021]), we perceive no error in County Court's denial of defendant's CPL article 440 motion. Nothing in the record suggests that the stun cuff was visible to jurors or that anyone in the courtroom was aware or became aware of the device on defendant's leg except for law enforcement and defendant (see People v Alexander, 127 AD3d 1429, 1432 [3d Dept 2015], lv denied 25 NY3d 1197 [2015]). To this point, it is axiomatic that defense counsel cannot raise an argument premised on a fact that he does not know. Although defendant contends that his experienced defense counsel should have investigated the reasons behind the heightened security at trial and whether additional security protocols were implemented against defendant, which could have led to the discovery of the stun cuff, such contention is rooted in speculation and insufficient to demonstrate a lack of strategy or other legitimate explanation (see People v Thibeault, 244 AD3d 1320, 1323 [3d Dept 2025]; People v Pottorff, 145 AD3d 1095, 1097 [3d Dept 2016], lv denied 30 NY3d 1063 [2017]; see also People v Henry, 207 AD3d 1062, 1064 [4th Dept 2022], lv denied 39 NY3d 940 [2022]).

Nevertheless, defense counsel cannot be faulted for failing [*4]to make an objection which has little to no chance of success, and in light of defendant's criminal and disciplinary history — including his alleged assaults on other incarcerated individuals and a correction officer while awaiting trial — some form of restraints would have been properly ordered (see People v Brooks, 139 AD3d 1391, 1392 [4th Dept 2016], lv denied 28 NY3d 1026 [2016]).FN3 Since the alternative to a stun cuff would have been handcuffs or shackles, which are unquestionably more visible forms of restraints, seeking a change from a discreet to more obvious form of restraints would have been inconsistent with defense counsel's strategy of deemphasizing the security measures at the courthouse in front of the jurors based on his comments during his request for curative instructions (see People v Washington, 89 AD3d 1140, 1142 [3d Dept 2011], lv denied 18 NY3d 963 [2012]). To the extent that defendant further alleges that the stun cuff compromised his right to a fair trial by preventing him from testifying because he "didn't want to get up . . . didn't want to move" to avoid being shocked, such allegations are belied by the record which confirms defendant repeatedly stood up and walked over to participate in all side bar conferences within the view of the jury. Accordingly, as defendant has not demonstrated the absence of a strategic choice or legitimate explanation, the failure to object to the use of a stun cuff does not constitute ineffective assistance of counsel under these circumstances (see People v Schrock, 108 AD3d 1221, 1222 [4th Dept 2013], lv denied 22 NY3d 998 [2013]; see also People v Ashline, 124 AD3d 1258, 1261 [4th Dept 2015], lv denied 27 NY3d 1128 [2016]). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.

Garry, P.J., Aarons, Ceresia and Mackey, JJ., concur.

ORDERED that the order is affirmed.

Footnotes

Footnote 1: A stun cuff is a device that could remotely discharge 80,000 volts of electricity to temporarily subdue and immobilize the wearer, such as in the event of an altercation or attempt to escape from custody.

Footnote 2: The sergeant testified that the stun cuff was approximately 2.5 to 3.5 inches in length, 6.5 to 8.5 inches in width, and about 1.5 inches in diameter/thickness.

Footnote 3: We note that County Court (Cawley, J.) performed a Buchanan inquiry at the commencement of the CPL article 440 hearing, determining that there was a sufficient predicate justifying the use of physical restraints on defendant during the proceeding.